·536     PEOPLE ex rel. O'BRIEN *v.* CRUGER.

FIRST DEPARTMENT, DECEMBER TERM, 1896.        [Vol. 12.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. O'BRIEN, Appellant, *v.* S. VAN RENSSELAER CRUGER and Others, Constituting the Board of Park Commissioners for the City of New York, Respondents.

*Veteran — when discharged without a hearing a veteran must demand it before applying for a mandamus — allegations on information and belief, not proof of the facts alleged — on an application for a peremptory mandamus the allegations in opposing papers are presumed to be true.*

It is the general rule that before a writ of mandamus will be issued the applicant must show a demand and a refusal, either in express terms or by conduct from which such refusal can be implied; but where the duty, the performance of which is sought to be compelled, is public, the rule does not apply.

An employee of the board of park commissioners of the city of New York who, as a veteran, is entitled to a hearing before he can be discharged from such employment, must, where it does not appear that such board has notice that he is a veteran, make a demand for a hearing before he is entitled to apply for a mandamus to compel it. WILLIAMS, J., dissented.

*It seems,* that an allegation on information and belief, where no grounds for the information and belief are stated, contained in an affidavit used on an application for a mandamus, is no proof of the fact alleged.

In determining whether an applicant is entitled to a peremptory writ of mandamus, the court must disregard any averments contained in his papers which are denied in the opposing affidavits, and assume the facts set out in the latter to be true.

APPEAL by the relator, John J. O'Brien, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of August, 1896, denying his motion for a peremptory writ of mandamus to compel the respondents, as park commissioners, to reinstate him in the position of "teamster with team," from which he had been removed.

*Frank H. Knight,* for the appellant.

*Terence Farley,* for the respondents.

RUMSEY, J.:

On the 18th day of April, 1896, the relator was appointed to the position of teamster with team, in the employ of the park commission, from which position he was removed on the 30th of May, 1896,

without any hearing being had on notice to him upon charges made. He made this motion for a writ of mandamus, which was denied at the Special Term, and he now appeals from the order denying his motion. Where one moves upon notice of motion for a peremptory mandamus he is entitled to it only when there is no conflict of fact in the papers presented to the court on the hearing. The Code provides that a peremptory writ of mandamus can be issued upon motion only where the applicant's right depends upon questions of law. (Code Civ. Proc. § 2070.) In considering, therefore, whether the applicant here is entitled to a peremptory writ of mandamus, any averments contained in his papers which are denied in the opposing affidavits must be disregarded and the facts set out in those affidavits must be assumed to be true. (*In re Haebler* v. *New York Produce Exchange,* 149 N. Y. 414; *People ex rel. Thompson* v. *Brookfield,* 6 App. Div. 398.)

It is not contradicted that the relator is a veteran. He says in his moving papers that at the time of his application for appointment he stated to one of the commissioners, to whom he made the application, that he was a veteran, and that fact is not denied. He further states in his moving affidavits, upon information and belief, that there is kept upon the records of the board of park commissioners a list of all the employees of the department of public works who are veterans, and that the fact that he was an honorably discharged sailor was known to the board of park commissioners of the city of New York. This fact is stated solely upon information and belief, and the sources of the information and the grounds of belief are not stated, so that the allegation itself amounts to nothing as proof of the assertions which are said to be believed by the applicant. (*Buell* v. *Van Camp,* 119 N. Y. 160, 165.) There is no other proof in the moving papers from which it could be inferred that it was known to the park commissioners that this man was a veteran. The affidavit of the respondents alleges that it does not appear upon the records or from any information which had been furnished by the relator, that he was a veteran. So, in the decision of this case, it must be borne in mind that although the relator was a veteran, that fact had not been made to appear to the respondents so that it had been entered upon their records. At the time O'Brien was appointed he was not within the provisions of the Veteran Act,

and there was no reason why the fact that he was a veteran should
have been made to appear, because the position which he had was
not one which would have entitled him to a hearing before discharge.
The act which entitled him to the privileges of a veteran only
became a law nine days before his removal, and it is not at all likely,
in view of the delay which always exists in publishing statutes, that
anybody was aware of the existence of this act at the time when the
relator was discharged on the thirtieth of May, nine days after its
passage.    But the respondents were bound by it, of course, whether
they knew anything of it or not, and the only question is whether,
upon the facts which it appears were then known to them, it was
their duty to have given to this man the privileges of a veteran to
which he would have been entitled if that fact had been made known
to them.    It did not appear upon their records.    There is no proof
that any one of them had been informed of it except Commissioner
McMillan, and there is no proof that he was ever informed of it in
such a way as to bring it to the notice of the board, or that they in
fact did have notice of it.    If they had no notice that this man was
a veteran, they were not in default for failing to give him the privi-
leges of one until, at least, he had brought the fact to their notice
and demanded the hearing which the law entitled him to.    The
respondents say that no such demand was ever made upon them,
and that statement in their opposing affidavit must be assumed to be
true.    The question is then presented whether it was the duty of
the relator to inform the park commissioners of his standing as a
veteran and of his right to a hearing and to demand such a hearing
before he would be entitled to a writ of mandamus to enforce that
right.    We are of the opinion that he was bound to make such a
demand, and that until he had made it and been refused, he was not
entitled to a peremptory writ of mandamus to restore him to the
position from which he had been removed.    It is well settled that
previous to the making of an application to the court for a writ of
mandamus to compel the performance of an official act, a demand
must be made by the applicant upon the officer that he do the act
which it is sought to compel him to perform, and the respondent must
have refused to comply with the demand, either in distinct terms, or
by conduct from which a refusal can be implied, because it is due to
the defendant to have the option of doing the act before an applica-

PEOPLE ex rel. O'BRIEN v. CRUGER.    539

App. Div.]    First Department, December Term, 1896.

tion shall be made to the court to compel him to do it. (*United States* v. *Boutwell*, 17 Wall. 604 ; 14 Am. & Eng. Ency. of Law, 106 ; High on Extr. Leg. Rem. §§ 13, 41.) While this is the general rule, yet there is undoubtedly an exception to it in cases where the duty to be performed is public in its nature. In such a case, the duty being public, it is not the business of any particular person to demand that it shall be performed, and if the officer has neglected to perform it when he should, the writ may issue without any previous demand and refusal. This distinction is recognized by the text writers and the authorities, and it was the express ground upon which the writ was issued without a demand in the case of *Commonwealth ex rel. Middleton* v. *Comrs.* (37 Penn. St. 237), and *Attorney-General*. v. *City of Boston* (123 Mass. 460). In each of these cases the fact that the duty of the defendant was a public duty was made the ground of the exception from the rule that a demand should be made upon them to perform the duty before a writ of mandamus issued to require it. The duty which is sought to be imposed upon the defendants here is not public at all. The writ is sought simply to protect a private right, in the performance of which nobody but the relator has any interest. The case is, therefore, within the general rule cited above.

But it is claimed that it is apparent from the papers that a demand and refusal would have been of no avail. There is not, however, one particle of evidence in the case from which that could have been inferred. At the time the relator was appointed, and until nine days before his removal, it was settled law that he did not hold a position by appointment, so as to entitle him to a hearing before his removal. (*Meyers* v. *Mayor, etc.*, 69 Hun, 291.) There is an almost necessary presumption in this case, not only that the commissioners did not know that the relator was a veteran, but that they were in truth ignorant of the law which gave him the privilege of a hearing, and that they supposed the law remained, as it undoubtedly had been down to nine days before, and that the removal of the relator without a hearing took place solely because they were ignorant of his rights. There is no suggestion in the papers, even upon the information and belief of the applicant, that the respondents would not reconsider their action and give him a hearing if they were asked to do it.

It is not too much to say in such a case that the person insisting upon a private right shall make application to a public officer to give him that which the law assures him he should have, and until he does make such application he ought not to be permitted to ask the court for its compulsory writ to give him the thing which, for aught that appears, he might have obtained by the asking.

For the reason that the relator did not make this demand, which it is still in his power to make, the order denying the writ was proper and should be affirmed, with costs.

Van Brunt, P. J., Patterson and Ingraham, JJ., concurred; Williams, J., dissented.

Williams, J. (dissenting):

The relator was appointed April 18, 1896, and was removed May 30, 1896, without any hearing being had upon notice to the relator upon charges made.

He was an honorably discharged sailor of the navy of the United States, having enlisted March 17, 1863, as a first-class messenger boy, and having been discharged February 23, 1864. When he was appointed he informed one of the board, Commissioner McMillan, that he was a veteran. The application for the writ was made upon notice to the park board, served about July 1, 1896. The board claimed that the removal of relator was for misconduct; that the board did not know at the time of his removal that he was a veteran; that he was not entitled to protection from removal under the Veteran Laws (so called), because he did not hold a position by appointment, and did not receive a salary, but was compensated by day wages; that mandamus was not the proper remedy, and that he made no demand that the board reinstate him before applying to the court for the mandamus.

The court denied the motion, in reliance upon the cases decided under the Veteran Acts as they existed prior to 1896. There were two such acts in force at the same time, one being chapter 312, Laws of 1884, amended by chapter 716, Laws of 1894, and the other being chapter 119, Laws of 1888, amended by chapter 577, Laws of 1892. Under these acts it was held that a veteran was entitled to protection from removal only when he held his position by appointment and received a salary, and was not within the terms

of the statute when he was merely an *employee* compensated for his services by *daily wages*. (*Meyers* v. *The Mayor*, 69 Hun, 291; *Matter of Wagner* v. *Collis*, 7 App. Div. 203.) But the acts of 1884 and 1894 were further amended by chapter 821, Laws of 1896, so as to include within their protection employees paid by *day wages*, as well as appointees who received a salary. This amendment of 1896 became a law May 21, 1896, nine days before the relator was removed. So far as applicable here, the act as so amended reads as follows:

"§ 1. In every public department and upon all public works of the State of New York, and of the cities, counties, towns and villages thereof  *  *  *  honorably discharged Union soldiers, sailors and marines shall be preferred for appointment, employment and promotion,  *  *  *  and no person holding a position by appointment or *employment*  *  *  *  and receiving a salary or *per diem pay*  *  *  *  who is an honorably discharged soldier, sailor or marine, having served,  *  *  *  shall be removed from such position or employment, except for incompetency or misconduct shown, *after a hearing upon due notice,* upon the charge made, and with the right to such employe or appointee to a review by writ of certiorari. A refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine, or a reduction of his compensation intended to bring about a resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong.  *  *  *

"§ 2. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

The facts appearing in the papers before the court clearly brought the relator within the provisions of the statute, as so amended in 1896, and rendered his removal unauthorized and improper. He was entitled to a hearing upon notice, upon the charges against him, before he could be removed. The cases relied upon by the court in denying the motion were inapplicable under this amended statute. The relator was removed without any hearing whatever, and was, therefore, entitled to be reinstated in the position. The only question is as to what remedy the relator might have for such reinstate-

542    PEOPLE ex rel. O'BRIEN v. CRUGER.

First Department, December Term, 1896.    [Vol. 12.

ment.   The statute as amended in 1896 gives the veteran a remedy by writ of certiorari to review the action of the board in removing him, and it fails to mention the remedy by mandamus in connection with such removal.   The amendment of 1894 did refer to the remedy by mandamus as an existing remedy which the veteran might have for such removal, but the amendment of 1896 changes the law in this respect, and provides that the remedy by mandamus may be had for righting certain other wrongs, viz., a refusal to allow the preference provided for in the act, and a reduction of a veteran's compensation with intent to bring about his resignation, but in this connection makes no reference to an unauthorized removal of a veteran.

Under the law as it existed prior to the amendment of 1896, this remedy was frequently used in cases of unauthorized removal, as appears by an examination of the cases, and no objection seems ever to have been raised to it.   (*People ex rel. Fonda* v. *Morton*, 148 N. Y. 156 ; *People ex rel. Connor* v. *Brookfield*, 2 App. Div. 299 ; *People ex rel. Brady* v. *Brookfield*, 6 id. 445.)   In these cases the writs were denied and the orders affirmed on appeal, but no question was made that the remedy by mandamus was not proper for the protection of a veteran, if he was entitled to protection at all.

The change in the statute as to this remedy, by the amendment of 1896, was peculiar, and yet, considering the language of the two amendments of 1894 and 1896, it may well be doubted if the Legislature intended, by the change in 1896, to limit the remedy of the veteran for an unauthorized removal to that of certiorari, and to deprive him of the remedy by mandamus, which was recognized by the amendment of 1894 as one then existing.   We see no reason why any technical rule should be applied to deprive the veteran of this remedy which he has heretofore had, and which will as effectually protect his rights now as the remedy by certiorari.   We are inclined rather to hold that this remedy is still preserved and was properly applied in this matter.   Indeed certiorari would furnish no remedy at all where there was no hearing, but a removal made without any hearing whatever.

It is, however, said that the motion was properly denied by the court because it did not appear that the respondents had, before the

motion was made, been requested to restore the relator to the position from which they had removed him, and had refused to comply with such request, and that there had been a demand and refusal to perform the act sought to be enforced by the writ of mandamus.

The general rule undoubtedly is that " a demand and refusal is necessary. Previous to the making of the application to the court for the writ to command the performance of a particular act, an express and distinct command or request to perform it must be made by the prosecutor to the defendant, who must have refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively implied, it being due to the defendant to have the option of either doing or refusing to do that which is required of him before an application shall be made to the court for the purpose of compelling him." (14 Am. & Eng. Ency. of Law, 106.)

This rule is not universal, however. There are exceptions to it. The application of this rule here would be merely technical, and could serve no good purpose. The reason of the rule is that a request or a demand might be followed by a compliance with, rather than a refusal of the request or demand, and the expense and trouble of the application to the court would then be rendered unnecessary. There was no such reason apparent in this matter, and the denial of the motion was not put upon any such ground by the learned judge before whom the motion was made. The respondents were chargeable with knowledge of the amendment of 1896 to the Veteran Act. It is not disputed that one of the respondents was informed at the time the relator was appointed that he was a veteran, and yet they removed and discharged him contrary to the provisions of the statute, and they have ever since strenuously resisted his efforts to obtain a reinstatement, and are still doing so. Whether he was properly removed, and whether he is entitled to be reinstated, is, upon the conceded facts, a matter of law and not of fact. The respondents expressed their judgment as to the law when they removed him, and having performed the act which they then claimed, and now claim, they had a legal right to perform, it would have been an idle ceremony for the relator to request and demand that they reverse their action and reinstate him in his position before the commencement of this proceeding to compel such reinstatement. It has frequently been

544 : PEOPLE ex rel. O'BRIEN v. CRUGER.

FIRST DEPARTMENT, DECEMBER TERM, 1896. · [Vol. 12.

held that a mandamus may be issued without an express demand and refusal when it clearly appears that the party did not intend to perform the act the performance of which is sought to be enforced.

In *Palmer* v. *Stacy* (44 Iowa, 340) the plaintiff was the owner of a judgment against the town. There was no property of the town subject to execution, and the officers of the town neglected to take any steps to raise the money to pay the judgment. It was held that a mandamus should be issued requiring the officers to levy the tax, raise the money and pay the judgment, and that no demand was necessary, the record clearly showing the intention on the part of the officers not to levy the tax, which was enough to authorize the issuance of the writ.

In *Com. ex rel. Middleton* v. *The Commissioners* (37 Penn. St. 237) the relator held bonds issued by the county, upon which the interest remained unpaid, and a mandamus was issued to compel the commissioners to levy a tax for the payment of such interest. It was held that no demand of and refusal by the commissioners to perform this duty, before issuing the writ, was necessary, because it was the neglect of an official duty, and it appeared that they did not intend to perform that duty.

In *Attorney-General* v. *City of Boston* (123 Mass. 460) a mandamus was issued to compel the city to continue to collect tolls upon a ferry. There was no request or refusal, but the court held it was unnecessary, the city having distinctly manifested its intention not to perform a definite public duty required of it by law. Other cases might be cited, but these are sufficient to illustrate the exceptions to the general rule, so far as they are material to the inquiry we are here pursuing. When a request and refusal, before applying to the court for a mandamus, would be a mere idle ceremony, it is not a prerequisite. Here the respondents had, as clearly as they could possibly do, indicated their intention to remove the relator from his position and keep him out. The statute of 1896 was clear. The duty of the respondents under it, in view of the fact that the relator was a veteran and entitled to the protection of this statute, to give him a hearing upon notice as to the charges before removing him, was clear, and yet they removed him without any hearing at all, and thus clearly indicated their intention to disregard the law and not to comply with their duty under it.

For the reasons herein suggested the order appealed from was wrong and should be reversed, with costs to the appellant, and the motion be granted, with costs.

Order affirmed, with costs.