In the Matter of the Application of OTTO STUTZBACH, Appellant, for a Peremptory Writ of Mandamus against BIRD S. COLER, as Comptroller of the City of New York, Respondent.

*Civil service — right of a veteran, not known to be such before his removal, to be reinstated — his right to be retained in a position as against other employees — a denial of immaterial allegations in his application for a mandamus does not justify its refusal.*

The removal, without charges, notice or opportunity to be heard, of a veteran, employed as a warrant clerk in the auditor's office in the city of New York, is not unlawful if the removing officer had no knowledge at the time of the removal that he was a veteran; but if the employee, after his removal, notifies the comptroller that he is a veteran and demands his reinstatement, he is entitled to be reinstated, provided he has not been guilty of such *laches* as constitutes a waiver of his legal right.

The preference accorded to veterans by the Constitution extends not only to their appointment, but to their retention in employment so long as the position to which they have been appointed exists, and if, for reasons of economy, it is necessary to remove some of the employees holding the same position, the veteran is entitled to be retained as against all other persons not entitled to a preference, notwithstanding that his superior officer avers that he is the least efficient employee, and the one who would be the least missed.

FIRST DEPARTMENT, JUNE TERM, 1901.     [Vol. 62.

The fact that papers, submitted in opposition to a motion for a peremptory writ of mandamus, to procure the reinstatement of a veteran who claimed that he was unlawfully discharged from a position in the civil service, contain several denials of matters alleged in the petition, which, however, were not essential to a statement of fact showing the relator's right to reinstatement, does not require the denial of the motion if, under the law, the veteran was entitled to reinstatement.

McLAUGHLIN and O'BRIEN, JJ., dissented.

APPEAL by the relator, Otto Stutzbach, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of March, 1901, denying the relator's motion for a peremptory writ of mandamus.

*Benno Loewy*, for the appellant.

*Theodore Connoly*, for the respondent.

HATCH, J.:

The relator, a resident of the borough of Richmond, New York city, an honorably discharged soldier of the United States in the late Civil war, was employed in July, 1898, as warrant clerk in the auditor's office at a salary of $1,200 a year and was transferred from the borough of Richmond to the borough of Manhattan on December 15, 1899; he was discharged from such employment on January 12, 1901, without charges, notice or opportunity to be heard, for the alleged reason that the appropriation available for the maintenance of the department in which he was employed was not sufficient to provide for the retention of the number employed there, and owing to " the exigencies of economy in the public service," his services were dispensed with, it being averred by the respondent that he was the least efficient man in the bureau and the one who would be the least missed.

After his discharge the relator commenced a proceeding for a peremptory writ of mandamus to compel his reinstatement by an order to show cause, upon the return of which the respondent interposed an affidavit in which he alleged that he did not at the time of relator's discharge know that he was an honorably discharged soldier; the peremptory writ was denied and the relator withdrew the proceeding. Thereafter, on the 9th day of March, 1901, the

relator applied for reinstatement personally and in writing, informing respondent of the fact that he was an honorably discharged soldier of the United States in the late Civil war, and that his discharge was, therefore, illegal, but the respondent refused to reinstate him, whereupon this proceeding was brought, and from an order made and entered herein denying the relief sought, this appeal is taken.

The comptroller had the undoubted right to dispense with relator's services for the reasons which he assigns, if at the time he did not know that the relator was a veteran, and, therefore, entitled to protection under the provisions of the Constitution. (*People ex rel. O'Brien* v. *Cruger,* 12 App. Div. 536; *People ex rel. McDonald* v. *Clausen,* 50 id. 286.) Before the comptroller was called upon to recognize the preference to which the relator is entitled, the latter was required to bring the knowledge of his right to preference home to the comptroller. As, however, the status of the relator does not depend upon the knowledge of the comptroller of the fact which entitles the former to a preference, it is sufficient for the relator, even after a dismissal, to bring such knowledge home to the comptroller and accompanying the same with a demand for reinstatement, he is entitled thereto, if, in law, he enjoyed a preference in employment, and has not been guilty of such *laches* as constitutes a waiver of his legal right. In the present case it sufficiently appears that the relator laid before the comptroller the facts showing that he is a veteran, and accompanied the same with a demand that he be reinstated in the position from which he had been removed. This evidence and the demand was seasonably made, and if the relator was, under the law, entitled to be retained, it became the duty of the comptroller to reinstate him in the position which he had formerly held.

It is said, however, that his application for a peremptory writ of mandamus must be denied for the reason that the opposing papers put in issue a material averment of the moving papers. Such is the established rule of law if an issue is thus raised. The petition upon which the relator bases his application is verbose in statement and contains much irrelevant and unnecessary matter, and this fact enabled the comptroller to interpose several denials to the matter averred in the petition. But the matters to which

the denials are interposed were not essential to a statement of fact showing relator's right to a preference if, under the law, he was entitled thereto. There is no denial of the fact that the relator was regularly appointed to the position which he held prior to his removal; that he was, in fact, a veteran; that he was removed without a hearing and without charges being preferred against him; that at the time of his removal there were persons retained in precisely similar positions in the comptroller's office, who were not veterans, or protected by the Veteran's Act or otherwise; and that he furnished the comptroller with proof of the fact that he was a veteran, and, after making such proof, demanded reinstatement, which demand was thereupon refused by the comptroller. These facts constituted all that it was necessary to establish in order to compel a reinstatement of the relator in his position, if he was so entitled as matter of law. None of the denials interposed or other matter averred in the answer put these facts, or any of them, in issue; consequently there is no material issue of fact in dispute, and the right of the relator is to be determined purely as a question of law.

In order that a denial shall raise an issue it must present an honest dispute as to a material fact requiring determination, otherwise no issue is made. (*Matter of Sullivan*, 55 Hun, 285.)

The preliminary question, therefore, must be resolved in favor of the relator. This brings us to the main question in the case, which is one not entirely free of difficulty. The Constitution (Art. 5, § 9) and chapter 370 of the Laws of 1899 furnish the authority upon which the relator's legal rights are to be determined. In *Matter of Keymer* (148 N. Y. 219) the court held chapter 344 of the Laws of 1895, which provided that competitive examinations for appointment in the civil service should not be deemed practicable or necessary as applied to honorably discharged soldiers and sailors of the late Civil war, for appointment to positions where the compensation or other emoluments of the office did not exceed four dollars a day, void, as being an invasion of the provisions of the article of the Constitution to which we have referred. And therein the rule was announced that the measure of preference for veterans was to be found in the constitutional provisions, and that it could not be extended or enlarged. This case reviews the civil service legisla-

tion of the State in relation to the preference which had from time to time been bestowed upon veterans. Prior to 1897 the law as it existed, independent of the Constitution, provided that veterans should be preferred for appointment, employment and promotion. Under such law it was held, in *Matter of McCloskey* v. *Willis* (15 App. Div. 594), that a veteran was entitled to retention in employment in the same position as against the right of another employee therein not a veteran; that if the exigencies of the public service required, for matters of economy, the dismissal of a part of the force, the veteran was entitled to be retained as against all other persons not entitled to a preference. This decision proceeded exclusively upon a construction of the statutory provision, and the constitutional provision does not seem to have been adverted to or considered. It is not, therefore, to be regarded as a controlling authority upon the construction of the constitutional provision. Chapter 184 of the Laws of 1898, which amended chapter 119 of the Laws of 1888, provided that, in cities of the first class, if the position held by an honorably discharged soldier, sailor or marine, or volunteer fireman, should become unnecessary or be abolished for reasons of economy or otherwise, such soldier, sailor, marine or fireman should not be discharged from the public service, but should be transferred to any branch of the said service for duty in such position as he might be fitted to fill, receiving the same compensation therefor. This law was repealed by chapter 370 of the Laws of 1899, section 21 of which, however, embodies the provisions of the repealed law. By section 20 of the last-named act the preference to be given to honorably discharged soldiers, sailors and marines is continued in the same language as is embodied in the constitutional provision. It appears from this review that the word "employment" has been dropped from the legislative enactments by the Legislature in the act of 1899. This undoubtedly was for the reason that such legislation should be in harmony with the rule of construction of the constitutional provision as laid down in *Matter of Keymer* (*supra*). The question, therefore, which confronts us is, whether the constitutional provision, giving preference to soldiers in appointment and promotion, creates a preference of retention in employment so long as the positions exist to which they have been appointed? I think the question is to be answered in

the affirmative. It is clearly apparent that the Constitution intended that veterans should have a preference in employment in the public service' of the State over other persons not veterans or otherwise protected. The preference thus intended to be given must be regarded as substantial and to carry with it every incident necessary to its complete protection and preservation. The preference given in appointment clearly involves a right over all other persons entitled thereto, not similarly situated. This right, to be of any value whatever, must be a continuing right, so long as the position exists to which the veteran is appointed. The purpose of thus giving him this preference of appointment was to furnish him with employment, and if, thereafter, he could be immediately discharged and other persons, not preferred, retained in the position, it is manifest that the intent of the law which seeks to prefer him would be entirely defeated. The right to appointment under such circumstances necessarily carries with it the right to continued employment as against other persons not so protected. It is quite easy to imagine a case where two persons, one a veteran and the other not, were upon the waiting list; the veteran by virtue of law takes precedence of appointment over the other person; a subsequently occurring vacancy might result in the selection of the unpreferred person to the same character of service and both being in the public employment and the appointing power being required, for reasons of economy, to discharge some of the employees therein, the veteran might be dropped and the last appointee retained. It is manifest that the law does not contemplate such a result. It defeats its purpose and makes the preference in appointment an unsubstantial thing, as, in effect, it nullifies the provision of law by which the right of the veteran is sought to be secured. Additional support for this view is found in the further preference which is given to the veteran by the constitutional provision, for he is entitled to preference to promotion in employment as well as to preference in appointment. His preference in promotion would be a mere hollow sham, if he may be immediately removed from his employment for reasons of economy and yet the position in which he was employed continues to exist and its duties are performed by other persons. His right to preference in promotion can only be available to him by retaining him in employment. It is no answer

to say that this provision of the Constitution is answered by giving him opportunity for promotion, if the right thereto accrues during the period of his employment. This places a limitation upon the scope of the constitutional provision, which I think was not intended. The preference in appointment was the means by which retention in employment could be secured; the preference in promotion was a further right intended to exist and continue so long as the position to which he was appointed remains, and he performed his duties as required by the rules governing his employment. It is quite possible that the veteran might not be as efficient as some other employee. This is always true where a number are employed performing similar duties. The law itself contemplates that the veteran may not be as efficient as the other persons and yet be able to perform the duties which devolve upon him. The fact was recognized that he might not be the most efficient employee because his appointment was preferred without regard to his standing upon the list, and the whole purpose of the law took this fact into consideration and expressly excluded his being rejected for such reason. It is evident to my mind that a fair construction of the constitutional provision requires us to hold that the veteran was not only entitled to preference in appointment, but also to employment and preference in promotion so long as the position should last, if opportunity presented, assuming that in the meantime he had properly discharged his duties in the employment.

This view finds further support in the provisions of section 21 of chapter 370 of the Laws of 1899, which, among other things, provides that, in cities of the first class, if the position held by the veteran becomes unnecessary or is abolished for reasons of economy or otherwise, he shall not be discharged from the public service, but shall be transferred to any branch of said service in such position as he may be fitted to fill, and receive the same compensation therefor. It is manifest from this provision of the statute that the intent of the Legislature was to secure the retention of the veteran in his employment, and, in any event, to retain him in the public service in some position. Language could scarcely be stronger indicating the legislative intent to prefer the veteran in his tenure of employment, and it would seem to be a clear violation,

both of Constitution and legislative intent, to permit of his discharge for reasons of economy, although the position which he filled still remains and continues.

The express command of the Constitution is that the Legislature shall enact laws for the enforcement of the section which gives to honorably discharged soldiers their preference. In *Matter of Breckenridge* (160 N. Y. 103) this provision, as contained in chapter 184 of the Laws of 1898, which, as we have seen, the present law has re-enacted, was the subject of construction, and it was therein held that, where the position had been abolished or become unnecessary, he could not be transferred except there was an existing vacancy in the department in which he served; that it was not the legislative intent that a vacancy should be created for the purpose of his transference. The court divided upon this subject, the minority holding to the view that the statute was mandatory and compelled his transfer, and the majority holding as above stated. It is, therefore, evident that there was no division whatever in the minds of the court upon the question as to the intent of the Legislature to give a preference in retention of the veteran in the public service. Upon this subject the language of the prevailing opinion is quite significant, *i. e.*, " The legislative intent was to secure the retention in the public service of the veteran, who is thrown out of office by its abolition, \* \* \*. The municipality itself appears to be laid under the obligation to retain the applicant. \* \* \* The law is capable of a reasonable and perfectly fair construction ; under which the veteran, who loses his office through its abolition, is not to be discharged from the public service if there is in any branch of that service a position, with equal emolument, which he is qualified to fill."

In that case the position was abolished and its duties were devolved upon other persons in other positions of service in the department. No one remained holding or discharging solely the distinct duties attached to the position which was occupied by the relator therein, up to the time of the abolition of the office, and as there was neither position nor vacancy the right which the law conferred upon the veteran entirely failed. In the present case the position of warrant clerk still remains, its duties are presently performed by sixteen other persons, who are not veterans and who are

not otherwise protected. There was here no abolition of the position; there was simply a reduction in the number of persons engaged to fill it, on account of a lack of sufficient appropriation to pay for the service. The position, however, remains, and so long as the relator properly discharged his duties and was not subject to be removed for dereliction therein, on charges preferred, he was entitled to be retained as against other persons employed in this position, who were not, as against him, preferred for service. In this respect the reasoning of the court in *Matter of McCloskey* v. *Willis* (*supra*) finds precise application. The fact that the relator was the least efficient of those employed neither authorized nor justifies his removal. Such fact is not made one of the grounds for discharging him from public service. The law evidently contemplates, as we have before observed, that the person thus preferred may be lacking in efficiency, but so long as such inefficiency does not render him incompetent for the proper discharge of the duties entailed by the position, and there is no dereliction of duty, he may not be removed therefrom, either arbitrarily or upon charges.

If these views are correct, it follows that the relator was improperly discharged, and is, therefore, entitled to a peremptory writ of mandamus to compel his restoration to the position from which he was removed. The order should, therefore, be reversed, with costs and disbursements, and the motion granted, with ten dollars costs.

PATTERSON and LAUGHLIN, JJ., concurred; McLAUGHLIN and O'BRIEN, JJ., dissented.

McLAUGHLIN, J. (dissenting):

Certain material allegations set out in the moving papers were denied, and this in and of itself was a sufficient ground for denying the application. (*People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215; *Matter of Haebler* v. *New York Produce Exchange*, Id. 414.) For instance, the comptroller denied that he knew, at the time the relator was dismissed, that he was a veteran of the Union army, and in connection with such denial alleged that he had no knowledge of that fact, nor had his attention been called to it by the relator or by any one else. He also alleged that, at the time the relator was dismissed, "it was found absolutely necessary to reduce the pay rolls of the Finance Department over $30,000.

That the only way this could be accomplished was by dismissing certain men, and rigid investigation was made through all the different bureaus in the Finance Department, and   *   *   *   fourteen employees in the Finance Department were notified that because of insufficiency of appropriation their services would no longer be required.  The relator   *   *   *   was one of these fourteen men. *   *   *   That more dismissals will have to be made to meet the reduction in the annual appropriation.   There are no vacant positions to which the relator could be transferred in the Department of which the deponent is the head."

In view of the denials contained in the opposing papers, coupled with the affirmative allegations that the dismissal of the relator was made necessary by reason of insufficient appropriation, and that there were no vacant positions to which the relator could be transferred, I do not see how the court could direct the reinstatement of the relator to the position formerly held by him by a peremptory writ of mandamus.   The fact that the respondent did not know, at the time of the dismissal, that the relator was a veteran must be taken as true (*Matter of Haebler, supra*), and, therefore, the act of the respondent in removing him was not illegal.   (*People ex rel. O'Brien* v. *Cruger,* 12 App. Div. 536; *People ex rel. McDonald* v. *Clausen,* 50 id. 286.)   This seems to be conceded in the prevailing opinion; but it is claimed that when knowledge of the fact that the relator is a veteran was brought home to the comptroller, accompanied with a demand for reinstatement, the relator thereupon became entitled to be reinstated; in other words, an act of the comptroller, legal in the first instance, was made illegal by information thereafter acquired by him.   This reasoning to me seems fallacious. The legal rights of the parties must be determined as of the time when the relator was dismissed, and nothing which either of them could thereafter do could make illegal an act theretofore legal.   If it be true that the relator had the right to insist upon a preference in employment, he lost that right by failing to give the comptroller the information prior to his dismissal, and he could not, after he had been dismissed, regain what he had lost by doing what would have prevented the loss, had he seen fit to act before the comptroller did.

But I am of the opinion even though the comptroller had knowl-

edge of the fact that the relator was a veteran at the time he dismissed him, that this did not prevent the dismissal.   Under the statute conforming to the constitutional provision on the subject, a veteran has a preference in appointment and in promotion, but not in employment, and to give the statute such a construction is to read into it something which is not therein contained.   It must be borne in mind that, except for the statute, a veteran has no preference over any other person, either in appointment or promotion, and when resort is had to it, it must be made to appear that the applicant comes clearly within its provisions.   Under chapter 821 of the Laws of 1896 a veteran had preference not only in appointment and promotion, but also in " employment," and it was held under this statute that, wherever there were two men employed in a public department, one a veteran and the other not, and the services of only one were required, that it became the duty of the superior officer who had the power to discharge, to retain the veteran and dismiss the other. (*Matter of McCloskey* v. *Willis*, 15 App. Div. 594.)   But this act was repealed by chapter 370 of the Laws of 1899, and the preference theretofore provided as to employment was stricken out, manifesting a legislative intent at least, that there should be no preference in employment after an appointment had once been made.   This statute conforms in terms to section 9, article 5 of the Constitution.

Section 20 of chapter 370 of the Laws of 1899 provides, and this is the only provision of the statute which gives a preference, that veterans " shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made," and that the employment or retention in the position to which the appointment had been made might be terminated, is perfectly evident from the following section (§ 21), which provides that, in cities of the first class, if the position occupied by a veteran " shall become unnecessary or be abolished for reasons of economy or otherwise," the veteran " shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor."

Here the position filled by the relator had become unnecessary and was abolished for reasons of economy, and if the comptroller had been notified of the fact of the relator's being a veteran he

would have been compelled to transfer him to such other position, had such position existed, but it did not give the relator the right to insist that other persons employed in that department should be discharged in order that he might be retained. Whatever may be our feeling in reference to the subject-matter involved, or how much we may desire to give a preference to veterans, it is our duty to construe the statute as we find it, according to its legislative intent, and when this statute is thus construed I do not see how it can be claimed that the relator was entitled to be reinstated. The fact is not disputed that the comptroller, for reasons of economy and because of an insufficient appropriation, found it necessary to discharge a large number of persons employed in the audit department. He discharged fourteen; the relator, being the least efficient of any, was one of them. But it is said that his act was illegal, because he did not make a place for the relator by discharging some other person employed in that department. This he was not bound to do. (*Matter of Breckenridge*, 160 N. Y. 103.) In the *Breckenridge* case the same contention was made and repudiated. Judge Gray, delivering the opinion of the court, referring to this contention, said : "Indeed, his counsel puts his case for him very frankly when he says ' the respondent is bound to make a place for the appellant, even if it should be necessary to dismiss from the service others who are not protected under the veteran acts.' That is a view which I think we should not take of this act. I do not think we should impute to the legislature the absurdity of intending to saddle an unnecessary officeholder upon the city ; or the *injustice of intending that some faithful and possibly more efficient officer who happens not to be a veteran must be discharged to make room for the incumbent.* * * * "

For the foregoing reasons I am of the opinion that the application for a peremptory writ of mandamus was properly denied.

O'Brien, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.