(36 Misc. Rep. 113.)

### In re NASH (LYNCH et al., Interveners).

(Supreme Court, Special Term, Erie County.   October, 1901.)

**·1. MANDAMUS—AFFIDAVITS OF ANSWER.**
   Where, on application for a peremptory writ of mandamus, there is a conflict between the affidavits of relator and respondents, and the issue of the writ is demanded notwithstanding, the affidavits of the answer must be taken as conclusive.

**2. NOMINATING CONVENTION—RESCISSION.**
   A city nominating convention may rescind before final adjournment a nomination for office.

**3. SAME—INTERVENTION BY COURT.**
   Where there is a dispute over the vote cast on the first formal ballot in a nominating convention, and a second ballot is thereupon taken, it does not justify intervention by the court.

Application of Simon A. Nash for a peremptory writ of mandamus requiring the chairman and secretary of the Democratic city convention to certify his nomination. Edward P. Lynch and Frank L. Cohen intervene. Writ denied. .

George H. Kennedy, for petitioner.
John W. Fisher and William B. Hoyt, for interveners.

KENEFICK, J. The rule is firmly established that when opposing affidavits are read upon an application for a peremptory mandamus which are in conflict with the averments in the moving affidavits, and notwithstanding this the relator demands a peremptory writ, the answering affidavits are conclusive, and must be regarded as true, as to any disputed questions of fact. People v. Cruger, 12 App. Div. 536, 42 N. Y. Supp. 398; Haebler v. Produce Exchange, 149 N. Y. 418, 44 N. E. 87. Guided by this rule, the facts upon which this application must be decided will be briefly stated: Prior to October 2, 1901, delegates were duly and properly elected by the affiliated Democratic voters of the city of Buffalo to attend a· convention for the purpose of nominating the candidates of that party for various city offices to be filled at the coming election. The convention was duly and regularly called to meet in said city on October 2, 1901, and at the time and place appointed was regularly convened and organized, and proceeded to the nomination of candidates. Under the party rules, each election district is entitled to a delegate in the convention, and that delegate is entitled to cast upon all questions a vote equal to the vote received in his district by the party nominee for governor in the last preceding state election. The chairman of the convention announced that, where two or more nominations were to be made for the same office, each delegate would be entitled to cast the vote of his district for as many candidates as there were places to be filled, and the candidates receiving the highest number of votes would be the nominees. This rule was followed in the nomination of four candidates for councilman, and acquiesced in by the convention. After nominating candidates for various offices, the convention proceeded to the nomination of two candidates for the office of justice of the peace, which was the final business of the conven-

tion. An informal ballot was first taken, and the result, as announced, was that the vote was distributed between five persons; the petitioner, Nash, and one Cohen and one Lynch receiving the greater number of votes, in the order named. The other two candidates were then withdrawn, and the convention proceeded to a formal ballot. Upon the formal ballot each delegate cast his vote viva voce for two of the three candidates above named. The four tellers who tabulated the vote differed as to the number of votes received by candidates Nash and Cohen. The vote as found by two of the tellers was: Nash, 20,225; Lynch, 19,189; and Cohen, 19,172; and as found by the other two tellers was: Nash, 20,013; Cohen, 19,384; and Lynch, 19,189. It will be observed that, while all of the tellers agreed that Nash received the largest vote, they did not agree as to his exact vote. The results as found by both sets of tellers were communicated to the chairman, who thereupon, without announcing the vote in detail to the convention, declared that Nash, having received the highest number of votes, was one of the nominees for said office; but the chairman did not assume to decide as to the other nominee, merely stating to the convention that a dispute existed between the tellers as to the vote received by the other two candidates. Thereupon a discussion ensued among the delegates as to the right of the chairman to declare the nomination of Nash, and as to the manner in which the discrepancy between the tellers had arisen, which discussion was terminated by the adoption by the convention of a motion to take a recess until October 4, 1901, at 10 a. m., at the same place. The convention reconvened at the appointed time. Upon the request of a delegate, the chair directed that the vote of the formal ballot as found by the two sets of tellers be announced to the convention, and it was announced as above set forth. Some discussion followed among the delegates, during the course of which it was stated that the discrepancy arose over the crediting of the vote of one election district; one set of tellers having credited it to Nash and Lynch, while the others had credited it to Cohen and Lynch. The crediting of this vote to Nash and Cohen would give Cohen the second highest vote, while crediting it to Nash and Lynch would give Lynch the second highest vote. The chair again ruled that Nash had been nominated on the previous ballot, and that it was necessary to take another ballot to decide as to the other candidate. Delegate Fisher appealed from the decision of the chair, and the chairman thereupon submitted to the convention the question as to whether his decision should be sustained. A large majority of the delegates, comprising a majority of the voting strength of the convention, voted against sustaining the decision of the chair; and the chairman announced, as the result of that vote, that the decision of the chair was overruled. Thereupon a motion was adopted that the convention proceed to a formal ballot for two candidates for nominees for justice of the peace, the voting to be confined to the aforesaid three candidates. A vote was thereupon taken, which resulted as follows: Cohen, 22,392; Lynch, 21,751; and Nash, 16,127. The chair announced the result of the vote, and declared Cohen and Lynch the nominees of the convention, and

the convention thereupon adjourned sine die. The facts above re-
cited conflict in many instances with the statements in the moving
papers. For example, the moving papers allege that after the chair
declared Nash one of the nominees the convention acquiesced in his
announcement, and that the adjournment was taken for the express
purpose of nominating a candidate for the remaining office of justice
of the peace, and, further, that upon the adjourned day the chairman
refused to entertain an appeal from his decision declaring Nash the
nominee, but that he did thereupon entertain an appeal from such
refusal, and submitted to the convention whether the chair should
be sustained in such refusal, and that the chair was not sustained,
but that the question was never submitted to the convention as to
whether the chair should be sustained in its ruling that Nash was
one of the nominees. All of these allegations are, however, denied
in the answering affidavits, and, under the rule of law above stated,
the answering affidavits must be taken as true.

The petitioner rests his right to relief upon two grounds, viz.:
First, that, as he received the largest number of votes on the first
formal ballot, he thus became one of the nominees, even though
the exact vote was not agreed upon by the tellers; and, second, that
the convention, having once nominated him, could not revoke or
rescind its action, and nominate another in his stead. The inter-
veners urge as an answer to the first proposition that, the tellers not
having agreed as to the exact vote received by Nash and Cohen on
that ballot, the ballot was irregular and of no force in effecting a
nomination of any of the candidates; and, as an answer to the
second proposition, that it was wholly within the power of the con-
vention, while it remained in session, to revoke or rescind the nomi-
nation of Nash, assuming he was nominated, and that it did so.

The conclusion which I have reached upon the second claim ad-
vanced by the petitioner renders it unnecessary to examine the first
claim. Assuming that the first formal ballot nominated Nash as
one of the candidates for justice of the peace, it was within the power
of the convention before it finally adjourned to revoke its action in
this regard, and to substitute another nominee; and this it did, in
effect, by the proceedings on the adjourned day. I think it may be
laid down as a general proposition that a deliberative body has the
power to rescind any action taken by it before it has finally com-
pleted the business for which it was assembled. What are the cir-
cumstances which will justify a court in reversing the final deter-
mination of such a body? The questions submitted to the judgment
of this convention were essentially political in their character, and
the courts are loath to interfere with the action of the convention
thereon. The court of appeals, in discussing the attitude of the
courts on this subject, makes these trite and pertinent observations:

"It is much more proper that questions which relate to the regularity of
conventions, to the nomination of candidates, and the constitution of com-
mittees, should be determined by the regularly constituted party authorities,
than to have every question relating to a caucus, convention, or nomination
determined by the courts, and thus, in effect, compel them to make party
nominations and regulate the detail of party procedure, instead of having

them controlled by party authorities." In re Fairchild, 151 N. Y. 366, 45 N. E. 943.

In that case there was a controversy as to whether Fairchild or Ward was the Republican nominee for congress in the Sixteenth congressional district. Whether a majority of delegates in the congressional district favored the nomination of Fairchild depended solely upon the regularity of the election of five delegates in the Second assembly district of Westchester county. The regularity of their election was contested in the state convention, and also before the state committee, and both these bodies decided that they were regularly elected. The court of appeals held that the action of the state committee and state convention should be regarded as controlling upon the courts. The action of such a convention must be characterized by fraud or oppression, to warrant the court in reversing its determination.

The question here under discussion, viz. the power of a convention to revoke a nomination, and the right of the court to interfere with such action, arose in the recent case of Phillips v. Gallagher (decided in the supreme court of Minnesota in 1898) 76 N. W. 287, 42 L. R. A. 226. Phillips and one Conroy were candidates for the nomination of sheriff. A ballot was taken, and the tellers disagreed as to the result. The chair held that the ballot was irregular, and a motion was carried that the convention proceed to another ballot. Before this ballot was taken the convention adjourned to the next day, when it again convened. A motion was made and carried that the ballot of the previous day be declared irregular, and upon the next ballot Conroy was nominated, but declined. One Whitcomb was then, on motion, declared the nominee of the convention. Phillips instituted the proceeding to compel the issuance to him of a certificate of nomination. Evidence was taken before a referee, and the court was evidently convinced that, upon the ballot which was declared irregular, Phillips had a clear majority of the delegates, and was nominated. The court held, however, that, as the convention had subsequently reversed its action and nominated another, its final determination upon the subject could not be interfered with by the court. In the course of the opinion the court says (page 226, 42 L. R. A., and page 287, 76 N. W.):

"The delegates in a nominating convention meet for the purpose of selecting and agreeing upon candidates for office, to be supported by the party. The discharge of this duty involves the exercise of judgment and discretion on the part of the members of the convention, and a majority of them have, in the absence of fraud or oppression, the right to control the action of the convention, and to correct or reverse any action taken by it. Such a convention is a deliberative body, and unless it acts arbitrarily, oppressively, or fraudulently, its final determination as to candidates, or any other question of which it has jurisdiction, will be followed by the courts. * * * It follows that the mere fact, if it be one, that the petitioner in this case received a majority of the votes on the first ballot, did not necessarily make him the party nominee, but it was entirely competent for the convention to declare the ballot informal or irregular, and take another."

There is no fraud or oppressive conduct on the part of the convention in the case at hand shown in the moving papers. So far as

is disclosed here, the dispute which arose over the vote on the first formal ballot was an honest dispute, due to an unintentional error on the part of one or the other of the sets of tellers. The moving papers do not indicate that any bribery of delegates or improper methods were resorted to to secure the result attained on the final ballot, nor do they show that any persons voted thereon who were not entitled to vote under the party rules and procedure. The total vote cast on the final ballot was 60,270, as against 58,586 on the first formal ballot, indicating that the adjournment did not prevent a full attendance of the delegates. Indeed, there is nothing shown which would warrant the court in reversing the deliberative final determination of this convention on these nominations. The motion for a writ of mandamus is denied.

Motion denied.