In the Matter of the Application of Ernest T. Haebler Respondent, for a Writ of Peremptory Mandamus *v.* The New York Produce Exchange, Appellant.

1. Mandamus — Order for Peremptory Writ — Consideration of Facts on Appeal. On the review of an order directing the issuance of a peremptory writ of mandamus in the first instance, where there are opposing affidavits, the Court of Appeals can consider nothing except the statements in the moving affidavits which are not denied, and the facts set up in the answering affidavits.

2. Motion for Peremptory Writ of Mandamus — Effect of Conflicting Affidavits. When, upon a motion for a mandamus, opposing affidavits are read which are in conflict with the averments in the moving affidavits, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and as to any disputed question of fact the answering affidavits are conclusive and must be regarded as true.

3. New York Produce Exchange — Commodities Subject to its Jurisdiction. The mere use of the word "produce" as a part of the name of the New York Produce Exchange is not sufficient to indicate that the purpose of its charter (Laws of 1862, chap. 359 ; Laws of 1882, chap. 36) — which empowers it, among other things, to inculcate just and equitable principles in trade, to adjust controversies and misunderstandings between persons engaged in business, to make all proper and needful by-laws, and to expel any member in such manner as may be provided by

its by-laws— was to limit the jurisdiction of the exchange to contracts relating to agricultural products.

4. Cement, an Article of Produce. Cement, which is taken from the earth, manufactured and made an article of merchandise, is to be regarded as an article of produce, and the regulation and enforcement of contracts relating to it are to be regarded as within the jurisdiction of the Produce Exchange.

5. By-law — Trial and Discipline of Members — Contract Made Outside the Exchange. The by-law of the New York Produce Exchange which provides for a hearing by the complaint committee in the case of any member "accused of willful violation of the charter or by-laws, or of fraudulent breach of contract, or of any proceeding inconsistent with just and equitable principles of trade, or of other misconduct," and for a trial by the board of managers if the committee fail to conciliate the disputants or induce them to arbitrate, and that, if the charge is substantiated, the member may be censured, suspended or expelled, taken in connection with its charter, gives the exchange jurisdiction to try and discipline a member for action inconsistent with just and equitable principles of trade in failing to comply with a contract made by him outside of and not upon the floor of the exchange.

6. By-law not Contrary to Public Policy— Opportunity to Arbitrate. Such by-law is not unreasonable, coercive or contrary to public policy because it gives the board of managers power to discipline only when a member refuses to arbitrate or conciliate. The fact that a member of the exchange is given an opportunity, but not required, to arbitrate or conciliate his differences, when a complaint has been made, before it shall be referred to the board of managers, does not affect the reasonableness of the by-law or its validity.

7. Sufficiency of Complaint against Member of Produce Exchange. *It seems,* that a complaint against a member of the New York Produce Exchange is not open to the objection that it merely charges a breach of contract, and, therefore, is insufficient to give the board of managers jurisdiction to try and discipline the member, when the complaint alleges that the member has been guilty of proceedings inconsistent with just and equitable principles of trade in failing to comply with a contract made by him.

8. Waiver of Insufficiency of Complaint against Member of Produce Exchange. When a member of the New York Produce Exchange has appeared before the board of managers in answer to a complaint and raised no objection to its sufficiency and tried the case before the managers upon its merits, the complaint must, on an application for a mandamus to compel reinstatement to membership after suspension as a result of the trial by the managers, be treated as sufficient and any objection to it on that ground regarded as having been waived.

9. State of Case Showing Jurisdiction in Board of Managers. When the affidavits in opposition to a motion for a peremptory writ of

mandamus to reinstate the relator as a member of the New York Produce
Exchange, on his suspension from membership after trial by the board of
managers, show that after making a valid contract calling for his accept-
ance of a shipment of cement, the relator refused to comply with it upon
a false pretext which was not put forth in good faith, a case is presented
warranting the court in holding that the board of managers had jurisdic-
tion to determine whether such conduct upon the part of a member con-
stituted a proceeding which was inconsistent with the charter and by-laws.

10. Arbitration under Rules of the Produce Exchange.   The
arbitration referred to in the by-laws of the New York Produce Exchange
is an arbitration under the rules of that exchange; and a member against
whom a complaint has been made has not done all that is required of him
to prevent trial and discipline by the board of managers, by offering to
arbitrate before another exchange, or before persons who were not mem-
bers of the Produce Exchange.

11. Suspension from Membership in Produce Exchange — Objec-
tion as to Interference with Vested Rights of Property.   On a
motion for a peremptory writ of mandamus to compel the relator's rein-
statement to membership in the New York Produce Exchange on his
suspension therefrom, after a trial by the board of managers, an objection
that the action of the board was an interference with vested rights of
property cannot prevail when the affidavits in opposition to the motion
state that the suspension of the relator does not affect his financial interest
in the property of the exchange, and it appears that the by-law authoriz-
ing such action is just, reasonable and fully authorized by the charter of
the exchange, and was in existence when the relator became a member,
and that he expressly agreed to abide and be controlled by it.

12. Authority of Produce Exchange to Discipline Members.
Under the by-laws now in force the New York Produce Exchange has
authority to discipline, through its board of managers, by censure,
suspension or expulsion, members guilty of unjust and inequitable con-
duct or proceedings in trade, although not actually fraudulent.

*In re Haebler* v. *N. Y. Produce Exchange,* 15 Misc. Rep. 42, reversed.

(Argued April 20, 1896; decided May 26, 1896.)

Appeal from order of the General Term of the Superior
Court of the city of New York, made December 2, 1895,
affirming an order of the Special Term, which directed that a
peremptory writ of mandamus issue commanding the New
York Produce Exchange to reinstate the respondent as a mem-
ber of that corporation.

No alternative writ was granted or asked for, but an order
was made directing that a peremptory writ should, in the first

instance, issue.  The order granted was based upon affidavits, and made on the return of a show-cause order.  Upon the return of the order the affidavits of the relator and of the president of the Produce Exchange were read, and upon such affidavits alone the order for a peremptory writ of mandamus was granted.

The facts, so far as material, are stated in the opinion.

*Abel E. Blackmar* for appellant.  As the application is for a peremptory writ, it is equivalent to a demurrer to the opposing affidavits.  The court may consider nothing except those allegations of the moving affidavits not denied, and the answering affidavits are conclusive.  All disputed questions of fact must be resolved against the applicant.  (Code Civ. Pro. § 2070; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *People ex rel.* v. *Cromwell*, 102 N. Y. 477.)  The suspension of Mr. Haebler was legal and valid.  (*People ex rel.* v. *F. M. B. Socy.*, 65 Barb. 357; Angell & Ames on Corp. § 422; *Hurst* v. *N. Y. P. Exchange*, 100 N. Y. 605; *Blumenthal* v. *Chamber of Commerce*, 7 Wkly. Cincinnati Bull. 327; *People ex rel.* v. *M. M. P. Union*, 47 Hun, 273; 118 N. Y. 101; *People ex rel. Thacher* v. *N. Y. Comcl. Assn.*, 18 Abb. Pr. 271; *Dickenson* v. *Chamber of Commerce*, 29 Wis. 45; *Goddard* v. *Mer. Exchange, St. Louis*, 9 Mo. App. 290; *People ex rel.* v. *Board of Trade*, 45 Ill. 112; *Pitcher* v. *Board of Trade*, 121 Ill. 412; *Inderwich* v. *Snell*, 2 Macn. & G. 216.)  The 32d section of the by-laws under which plaintiff was suspended is valid.  (*Hurst* v. *N. Y. P. Exchange*, 1 Cent. Rep. 260; 100 N. Y. 605.)  There is nothing in the fact that the contract referred to in the complaint was not made on the floor of the exchange.  (*People ex rel. Thacher* v. *N. Y. Comcl. Assn.*, 18 Abb. Pr. 271.)

*Robert B. Honeyman* for respondent.  The Produce Exchange had no jurisdiction over the matter.  (*Matthews* v. *Associated Press*, 136 N. Y. 333; *Leech* v. *Harris*, 2 Brewst.

571.) The by-law is unreasonable, coercive and contrary to public policy, and, therefore, invalid. (*State* v. *Merchants' Exchange*, 2 Mo. App. 96; *Wilkesbarre* v. *Luzerne*, 84 Penn. St. 59; *Seneca Co. Bank* v. *Lamb*, 26 Barb. 595.) The board of managers had no jurisdiction or authority to take any action in the matter. (*Nelson* v. *Bd. of Trade*, 27 Chicago Leg. News, 322; *Wicks* v. *Monihan*, 130 N. Y. 232; *In re Beneficial Assn.*, 35 Penn. St. 151; *State* v. *Savannah Exchange*, 54 Ga. 666; *State* v. *Merchants' Exchange*, 2 Mo. App. 96.) The action of the exchange is an interference with a vested property right, and, therefore, invalid. (*McKane* v. *Adams*, 123 N. Y. 611; *Wicks* v. *Monihan*, 130 N. Y. 232.)

Martin, J. A peremptory writ of mandamus can be issued in the first instance, only where the applicant's right to it depends solely upon questions of law. When any question of fact arises, a peremptory mandamus cannot be issued until an alternative writ has been issued, served, and the return day has elapsed. (Code of Civil Procedure, § 2070.) As the order in this case was for a peremptory writ, this court can consider nothing except the statements in the moving affidavits which are not denied, and the facts set up in the answering affidavits. Where upon a motion for a mandamus opposing affidavits are read which are in conflict with the averments in the moving affidavits, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and as to any disputed question of fact, the answering affidavits are conclusive and must be regarded as true. (*People ex rel.* v. *Cromwell*, 102 N. Y. 477; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *People ex rel.* v. *Brush*, 146 N. Y. 60; *People ex rel.* v. *Mayor, etc.*, 149 N. Y. 215.) Therefore, as most of the averments in the relator's affidavit are contradicted by the affidavits read in opposition to the motion, the question of the relator's right to the order granted must be determined principally upon the facts contained in the latter.

The New York Produce Exchange was created under an act of the legislature passed April 19, 1862. It was incorpo-

rated under the name of the New York Commercial Association. In 1867 its name was changed to New York Produce Exchange. The statute of 1862 was several times amended. At the time of the transaction which was the ground of the defendant's suspension, the statute declared the purpose of the corporation to be to provide suitable room or rooms for the Produce Exchange in the city of New York, " to inculcate just and equitable principles in trade, to establish and maintain uniformity in commercial usages, to acquire, preserve and disseminate valuable business information, to adjust controversies and misunderstandings between persons engaged in business, and to make provision for the widows and families of deceased members." (Laws 1882, ch. 36, § 2.) It also conferred upon the corporation power to make all proper and needful by-laws not contrary to the Constitution and laws of the state of New York or of the United States, and to admit new members and expel any member in such manner as might be provided by its by-laws. In pursuance of the authority thus conferred, the corporation established certain by-laws, which were in existence at the time of the controversy between the parties, including section thirty-two, which provided : " Any member of the Produce Exchange who shall be accused of willful violation of the charter or by-laws, or of fraudulent breach of contract, or of any proceeding inconsistent with just and equitable principles of trade, or of other misconduct, shall, on complaint, be summoned before the complaint committee, when, if he desire, he shall be heard in his defense. Should the committee be unable to conciliate the disputants, or induce them to arbitrate, and the circumstances seem to warrant, the complaint shall be referred to the board of managers, when both plaintiff and defendant shall have an opportunity to be heard again in person prior to final action in the case ; and if, in the opinion of the board, the charge or charges against said defendant be substantiated, it may, by a vote of not less than two-thirds of all the members present, either censure, suspend or expel him from the exchange."

The rules of the Produce Exchange do not purport to definitely regulate the trade in all the products which are commonly dealt in by its members, and, therefore, it had adopted no rules specifically regulating trade in cement. As a general thing, it is only in cases where products and merchandise are dealt in by contracts for future delivery of designated grades that rules are provided regulating the grade, securing the performance of the contract by margins, and that special committees are appointed to establish such grades. There is a great number of products, animal, vegetable and mineral, that are dealt in by members both on the floor of the exchange and elsewhere, the dealing in which is not specifically regulated by rules passed for that purpose. The New York Produce Exchange claims the right to inculcate just and equitable principles of trade without reference to the question, whether it has by its rules attempted to exercise its power of establishing uniform commercial usage in such trade.

The relator's version of his transactions with C. B. Richards & Co. cannot be considered, as the statements upon that subject in his affidavit were put in issue by the replying affidavits of the appellant. On the eleventh of July, 1895, C. B. Richards & Co. filed a complaint against the relator with the proper committee of the appellant, accusing him of proceedings inconsistent with just and equitable principles of trade in his failure to comply with the terms and conditions of a contract dated January 22, 1895, for eight thousand barrels of Portland cement which was partially delivered. Proceedings were then regularly instituted under the by-laws of the exchange, and both the complainant and the relator appeared before such committee. The committee being unable to conciliate the disputants or to induce them to arbitrate, duly referred the matter to the board of managers. Both parties received due and regular notice of the proceedings before the board, and were given an opportunity to be heard. The case came on for trial before the board July 24, 1895, when both parties were present and were fully heard.

A written statement is set forth in the record which purports

to contain the relator's objections to the proceedings against him before the board, which is to the effect that it had no jurisdiction or authority over the parties, or the contract in dispute, and the grounds upon which such objections were based are specifically stated. There is, however, no proof that that statement was ever served upon, delivered to, or seen by the appellant, its board of managers, or committee, prior to the decision of the board. The relator also alleged in his affidavit that his counsel stated to the board that he desired to take objections to the jurisdiction of the exchange and to the proceedings, and that the relator reserved such objections before entering upon the trial. The affidavit read in opposition to the motion contains an express denial of those statements, and allegations to the effect that the counsel for the relator did not state to the board of managers that he desired to take objections to the jurisdiction of the exchange and the proceedings of the board, and that the relator did not reserve any objections to the proceedings, but entered upon his defense upon the merits. Hence, under the rule of law previously stated, the affidavit of the appellant must control, and the record must be treated as establishing those facts.

The complainant offered evidence, both documentary and oral, which tended to show that the relator was guilty of proceedings inconsistent with just and equitable principles of trade in refusing to accept and pay for a shipment of cement which came into the port of New York by the steamer Salerno ; that he was bound by a written contract to accept the same, but rejected it on the unfounded pretext that the parties had agreed that the shipment should be made by the Red Star Line of steamers, and not by the Salerno, when there was no such agreement between the parties as the relator well knew ; that his reason for refusing the shipment was not put forward in good faith, but was a mere pretext, and that the relator did not claim at any time that he rejected the shipment because it was the third in the month of May, until after the final action of the board. The complainant also offered evidence which tended to show that the relator accepted a delivery order for

two shipments of cement, held the same seven days in which he had an opportunity to re-sell it; that it had declined in price since the making of the contract, and that after keeping the order for seven days he, in violation of his contract, rejected it on the unfounded pretext that it was of short weight, and the cooperage defective, when, as a matter of fact, as the relator well knew, the rejection of the goods was not justifiable, or made in good faith. Both the parties examined and cross-examined the witnesses produced, and themselves testified as witnesses in the proceeding. Three afternoons were consumed by the board in hearing the evidence, and ninety-six pages of testimony were taken, no part of which is contained in the record.

Upon the conclusion of the trial, after considering the testimony, the board of managers were unanimously of the opinion that the charge of unjustly and inequitably failing to perform the contract was established, and the relator was suspended for that reason. He was present during the entire examination, except that two witnesses were produced and examined in his absence, but a written copy of their testimony was furnished to him, and he afterwards appeared, stated that he had read the testimony thus taken, expressed a desire to examine such witnesses, and they were produced and cross-examined at length by him. The relator made no objection to the testimony, which was thus taken, nor did he request the board to summon any other witnesses, except that at its last session he stated that he was unable to procure the attendance of certain witnesses, and asked it to compel two of them to attend. At the close of that session, however, when asked by the board what such witnesses could testify to, he replied: " If you want to try this matter on the strict letter of the contract, I am willing to close the case right now." The case was thereupon closed, and the resolution of suspension was passed by the board that afternoon.

The relator fully understood the scope and nature of the investigation, and voluntarily entered upon his defense upon the merits, making no objection to proceeding with the case,

except he claimed that the matter ought to be brought before the Building Exchange.

The suspension of the relator does not affect his financial interest in the property of the exchange, as that interest is represented by a certificate of membership, which certificates are bought and sold upon the market. Since the amendment of the by-laws in 1864, an unjustifiable breach of a contract has been regarded by the officers of the exchange as inconsistent with the provisions of section thirty-two. They have also regarded the right to require a fulfillment of commercial obligations as a condition to the right to enjoy the privileges of the exchange necessary to carry into effect the purposes of its charter. When the relator joined the exchange he signed an agreement to abide by its by-laws, rules and regulations, and among the by-laws, as they then existed, was the one heretofore referred to. The foregoing are substantially the facts as set forth in the appellant's affidavit, and must be regarded as indisputably established in determining this appeal.

Therefore, it must be assumed that the relator appeared before the board of managers, presented his evidence, did not object to its jurisdiction or its right to try him, or to the sufficiency of the complaint; that the evidence offered upon the trial tended to show that he refused to perform his contract under a pretext known to him to be false; that he held for seven days the delivery order of another portion of the merchandise to enable him to sell it at a profit; that meanwhile the market declined, and he finally rejected it under another pretext known to him to be false, and not advanced by him in good faith; and that in the opinion of the exchange these facts and circumstances rendered the non-fulfillment of his contract unjust and inequitable and in contravention of the provisions of its by-laws.

The relator seeks to uphold this order upon the grounds: 1. That the appellant had no jurisdiction over the matter, for the reason that the contract was for cement, which was not an article of produce, and also upon the ground that the contract was not an exchange contract, having been made between two

firms who were not only members of the Produce Exchange, but of other exchanges, and made without reference to any exchange or its rules; (2) upon the ground that the by-law under which the relator was suspended is unreasonable, coercive and contrary to public policy, and gives the board no power to discipline a member except when he refuses to conciliate or arbitrate; (3) that the board of managers had no jurisdiction or authority to take any action in the matter because the complaint was insufficient as it charged a mere breach of contract, and the relator having offered to arbitrate that was all that was required of him under the appellant's charter and by-laws; and (4) that the action of the board of managers was an interference with vested property rights, and, hence, invalid.

In considering the grounds relied upon by the relator, the first question is whether, both parties being members of the Produce Exchange, and the contract being one for cement, it was within its jurisdiction. Neither in the statute creating the exchange nor in its by-laws do we find any provision limiting the contracts which shall be made between members, and over which it shall have jurisdiction, to those relating to agricultural products. The claim of the respondent is that the appellant's jurisdiction to regulate and enforce just and equitable rules of trade applies only to contracts relating to such products. We find nothing to justify that contention. It seems to be based solely upon the name of the corporation. There is nothing in the statute to limit the articles in which the members of this corporation may deal by contract, unless it is to be inferred from its corporate name. We do not deem the mere use of the word "produce" as a part of its name as sufficient to indicate that the purpose of the statute was to limit the appellant's jurisdiction to contracts relating to agricultural products. We think cement, which is taken from the earth, manufactured and then becomes an article of merchandise, should be regarded as an article of produce, and the regulation and enforcement of contracts relating to it as within its jurisdiction.

Nor do we think the respondent's claim, that the defendant had no jurisdiction because the contract was not made upon the floor of the exchange, can be sustained. In *People ex rel. Thacher* v. *New York Commercial Assn.* (18 Abb. Pr. 271), where a similar question arose under the by-law we are now considering, it was held that the corporation might expel a member for a breach of his duty toward it or for any act in contravention of the purposes for which the charter was obtained; and that, as the charter stated that the company was formed among other things to inculcate just and equitable principles in trade, it might expel a member for wrongfully obtaining goods although the offense was not committed on the floor of the exchange nor against a member of the association. The opinion in that case seems to cover the question before us, is well reasoned, and we think properly holds that this by-law was intended to regulate the conduct of its members in commercial transactions as well when contracts are made outside as when made on the floor of the exchange.

We find no ground to uphold the contention of the respondent, that the by-law under consideration is unreasonable, coercive, contrary to public policy, and invalid, because it gives the board power to discipline only when a member refuses to arbitrate or conciliate. We think the fact that a member of the exchange is given an opportunity to arbitrate or conciliate his differences, where a complaint has been made, before it shall be referred to the board of managers, does not in any way affect the reasonableness of the by-law or its validity. He is not required to submit his differences to arbitration, but may do so or not as he chooses. The validity of such a by-law seems to be sustained by the doctrine of the *Thacher* case (*supra*), and also by the case of *Matthews* v. *Associated Press* (136 N. Y. 333). In the latter case the defendant, which was incorporated under chapter 754 of the Laws of 1867, for the purpose of "the mutual protection of members of the press, procuring and supplying its members with telegraphic news, upholding and elevating the character and standing, and the promotion and maintenance of the general interest of the

54

profession and its members," adopted a by-law which provided that no member of the association should receive or publish "the regular news dispatches of any other news association covering a like territory and organized for a like purpose," and provided a penalty for the violation of that by-law in the form of the suspension of all the rights and privileges of the association, after an opportunity had been given to the accused to be heard. In an action to restrain the defendant from enforcing the penalty thus provided it was held that the association had the power to enact it; that it was not objectionable either as unreasonable and oppressive, as tending to restrain trade and to create a monopoly, or as an unlawful interference with vested property rights. The principle of that case has an important bearing upon this question. If such a by-law is not to be regarded as unreasonable, coercive, or contrary to public policy, we think the by-law of the appellant is not.

We are also of the opinion that the board of managers had jurisdiction to take action in the matter, and that the complaint was not insufficient because charging a mere breach of contract. The charge was more than that. It was that the relator had been guilty of proceedings inconsistent with just and equitable principles of trade in failing to comply with his contract. If, however, the complaint was insufficient, yet, as the relator appeared, raised no objection to its sufficiency and tried the case upon its merits, it must be treated as sufficient, and any objection to it upon that ground regarded as having been waived. As the affidavit read in opposition to the motion shows that after a valid contract by which the relator was bound, he refused to comply with it upon a false pretext which was not put forth in good faith, we think the board of managers had jurisdiction to determine whether such conduct upon the part of one of its members constituted a proceeding which was inconsistent with its charter and by-laws.

The relator's contention, that he offered to arbitrate and thereby did all that was required of him, does not seem to be

sustained. The arbitration referred to in section thirty-two of the appellant's by-laws evidently contemplated an arbitration under the rules of the Produce Exchange, while the relator offered to arbitrate only before the Building Material Exchange or others who were not members of the corporation.

The only remaining ground upon which the relator seeks to uphold the order is, that the action of the board of managers is an interference with vested rights of property. The answer to this proposition is : *First,* that in the affidavit used in opposition to the motion it is stated that the suspension of the relator does not affect his financial interest in the property of the exchange ; and, *second,* that the by-laws authorizing such action by the corporation were in existence when the relator became a member of the association, and he expressly agreed to abide and be controlled thereby. The relator had a right to become a member of this corporation, and to agree to be governed by its charter and by-laws, and when he did so they expressed the contract by which he and every other member were bound, and which measured their rights, duties and liabilities as members thereof. ( *Weston* v. *Ives,* 97 N. Y. 222; *Belton* v. *Hatch,* 109 N. Y. 593; *O'Brien* v. *Grant,* 146 N. Y. 163, 173.) "A member of a corporation may so hedge himself in by agreement as to yield the protection which one seeks in the ordinary affairs of life, and enlarge the authority that may be used against him." (*People ex rel.* v. *N. Y. Cotton Exchange,* 8 Hun, 216, 220.) Hence, to determine the rights of the parties to this controversy, we must be governed by the provisions of the appellant's charter and the by-laws it has adopted. As the members, who assented to them, are bound by the charter and by-laws of the corporation, their rights are to be measured by them, and a member should not complain of an expulsion or suspension where the proceedings are authorized and are fairly conducted under its laws. That the by-law under consideration is just, reasonable and fully authorized by the appellant's charter, has already been decided by this court. (*Hurst* v. *N. Y. Produce Exchange,* 100 N. Y. 605 ; 1 Central Rep. 260.)

The purpose of the appellant's organization is a laudable one. Its charter and by-laws should be fairly construed to accomplish the objects intended. One of the chief and most important of them is to inculcate just and equitable principles of trade among its members, and every proper effort on its part to accomplish that design should be sustained. But it by no means follows that a member may be arbitrarily suspended or expelled upon insufficient grounds, or through the caprice of its officers or other members, with no proof of conduct upon his part which was in contravention of the charter or by-laws of the corporation, and, hence, it may be that a member charged with the breach of an alleged contract which he denies having made, or upon which he denies his liability, where there are fair and reasonable grounds for such denial, is not subject to discipline by the defendant. But that is not this case. The affidavits of the appellant conclusively establish the fact that the relator refused to perform his contract under pretexts known to him to be false. It may be that his action in that respect did not amount to a legal fraud, but its moral turpitude clearly rendered it inconsistent with the provisions of the appellant's charter and by-laws, or even with common honesty.

We think the established facts in this case fully justify the conclusion of the board. The purpose of the appellant's incorporation is not the transaction of business for gain, but to elevate and maintain the business standard of its members. This can be accomplished only by requiring them to adopt and follow just and equitable principles in all their commercial transactions and dealings. To secure that end the appellant has the right to insist that their dealings shall be conducted upon principles of integrity, honesty and fairness. Any dishonest or unfair transaction by a member is in direct contravention of the purpose and intent of the appellant's organization, and it is authorized to censure, suspend or expel a member who thus offends. If its members are not required in all their commercial dealings and business transactions to adhere to those principles, an essential purpose

for which the appellant was organized will be subverted, its reputation and the reputation of its members for honest dealing lost, and its usefulness and importance greatly diminished if not totally destroyed.

Any suggestion to the effect that a member of this corporation can, under its by-laws as they now stand, be disciplined for a breach of contract only where it is fraudulent, cannot, I think, be sustained. Such a construction of the by-law under consideration would be altogether too narrow, and would clearly defeat its manifest intent and purpose. Prior to 1864 it provided for the censure, suspension or expulsion of a member only when he was accused and found guilty of willful violation of the charter or of the by-laws, or of fraudulent breach of a contract, or other misconduct. In that year it was amended by enlarging its provisions so as to apply to cases where members were accused and found guilty of proceedings inconsistent with just and equitable principles of trade. The provisions of the charter fully authorized this amendment. Its purpose obviously was to enlarge the control of the appellant over its members and their commercial dealings and transactions. That the purpose of the amendment was to confer upon the board of managers authority to discipline members guilty of unjust and inequitable conduct or proceedings in trade including breach of contract, although not actually fraudulent, we have no doubt. Indeed, this proposition is not seriously denied.

Having thus considered the established facts, the provisions of the appellant's charter and by-laws and their manifest purpose, and the authorities bearing upon the question, we think it obvious that the appellant had full jurisdiction and authority to investigate the transaction which resulted in the respondent's suspension and that the grounds upon which it was based were sufficient to justify the action of the board, and that the orders of the General and Special Terms should be reversed, and the writ of mandamus dismissed, with costs to the appellant in all the courts.

All concur.

Ordered accordingly.