ABE SHAPIRO, Plaintiff, *v.* JOSEPH GEHLMAN, as President of the THEATRICAL PROTECTIVE UNION LOCAL NO. 1 of the INTERNATIONAL ALLIANCE THEATRICAL STAGE EMPLOYEES AND MOTION PICTURE MACHINE OPERATORS, Counties of New York, Richmond and Bronx, a Voluntary Association of More Than Seven Members, Defendant.

Supreme Court, New York County, June 18, 1934.

*Ornstein & Silverman,* for the plaintiff.

*Rubien & Bregoff* [*Abner J. Rubien* and *Alexander R. Diamond* of counsel], for the defendant.

HOFSTADTER, J. The plaintiff by this action appeals to this court to reinstate him in the Theatrical Protective Union, Local No. 1, from which organization he claims he was unlawfully suspended. He also seeks recovery of damages sustained by reason of this suspension.

In August, 1933, one Louis Yeager, the business agent of the defendant union, charged the plaintiff under section 56 of the by-laws with making slanderous statements against him. Section 56 reads as follows: " § 56. ·Any member of this organization making or circulating false or slanderous statements against an officer or member shall be compelled to prove same, failing to do so he shall be deemed guilty of conduct unbecoming a member and shall be fined, suspended or expelled at the option of the Union."

The alleged slanderous statements were contained in charges duly made by Shapiro against Yeager pursuant to and in conformity with the constitution and by-laws of the union. Yeager was subsequently exonerated of these charges by formal action of the members of the union. Shapiro was notified of the accusations against him and a committee of five members was appointed to act as a trial committee to examine into them. Hearings were held and the committee recommended that the plaintiff be suspended for a period of one year. Its report was adopted by the union upon an appeal to it on behalf of Shapiro. Plaintiff then appealed to the president of the International Alliance (the parent body), who denied the appeal and sustained the action of the local. No further appeal was taken, although the laws of the union afforded such right.

Two prior complaints filed herein were dismissed at Special Term, but in the latter instance the plaintiff was given leave to serve a further amended complaint setting forth facts to show either that he had exhausted his rights within the union or that the prosecution of such rights would be futile. Concededly, the present complaint contains no such averments, but sets up alleged irregularities in procedure and non-compliance with the by-laws and constitution.

In view of this change in the theory of the action the decision at Special Term does not necessarily require a dismissal of the complaint. While it is the general rule that a member of an unincorporated association may not appeal to the courts unless it is affirmatively established that he has exhausted his remedies within the organization (*Cabana* v. *Holstein-Friesian Assn.*, 196 App. Div. 842, 850; affd., 233 N. Y. 644), it is equally well settled that where the proceedings resulting in suspension or expulsion were irregular and illegal, immediate recourse may be had to the courts. (*Polin* v. *Kaplan*, 257 N. Y. 277; *Gersh* v. *Ross*, 238 App. Div. 552; *Rodier* v. *Huddell*, 232 id. 531.)

The plaintiff contends (1) that he was not tried before a proper tribunal; (2) that the charges made against him were not cognizable in that he committed no offense against the constitution and by-laws of the union; and (3) that he was not afforded a fair trial upon specific charges with a full opportunity to defend.

The first contention, that the proceedings were irregular because he was not tried by the executive committee of the union, is without merit. Yeager was a member of that committee by virtue of his office, and moreover it appears from the testimony that the charges were filed at the insistence of the members of that body who thereby feeling themselves interested in these charges deemed it more appropriate that a trial committee be appointed. The plaintiff has no standing to complain that he was tried before an impartial rather than a partial tribunal. Indeed, his trial before the executive committee would raise serious questions as to its legality. (*Wilcox v. Royal Arcanum*, 210 N. Y. 370, 378; *People ex rel. Meads v. McDonough*, 8 App. Div. 591, 601.)

The further contention is made that the charges were not cognizable under section 56 of the by-laws in that the alleged slanderous statements were contained in a formal proceeding specifically authorized by the constitution. It is well established that when a person affiliates himself with a voluntary association he thereby agrees to abide by its constitution and by-laws which measure his relations to the organization and are the contract by which he is bound. (*Polin v. Kaplan*, 257 N. Y. 277; *Matter of Haebler v. N. Y. Produce Exchange*, 149 id. 414, 427.) Thus, Shapiro agreed when he joined the union that he might be suspended for a cause and in the manner provided by the contract of membership. It is provided in article VII of the constitution that the chairman of the meeting during which charges are filed shall " rule whether the charges are cognizable by the rules of the Union." (See *Krause v. Sander*, 66 Misc. 601; affd., 143 App. Div. 941.) In the absence of a showing that such determination was arbitrary, capricious, or made in bad faith, the court may not interfere. In *Hall v. Morrin* (293 S. W. 435) the Court of Appeals of Missouri held that a similar charge described an offense contemplated by a constitutional provision of like tenor, even though the statements appeared in a petition filed in court. There is nothing contained in *Polin v. Kaplan* (*supra*) which is contrary to this conclusion — the bringing of the charges by the plaintiff against Yeager violated no express provisions of the constitution and by-laws, but it does not follow that slanderous statements contained therein are privileged. The conclusion so reached by the responsible officials of the union charged by the constitution with

such determination is not demonstrated to be so unreasonable or capricious as to warrant interference by this court.

Finally, the charges filed against the plaintiff were sufficiently definite to apprise him of their nature, and he was afforded ample opportunity to meet the accusations. He did not avail himself of this opportunity beyond the making of categorical denials, but chose rather to rely on alleged defects in procedure. The court is not disposed to interfere with decisions rendered by organizations of this character in the absence of special circumstances requiring such intervention. The proceedings resulting in the suspension of a member may be summary so long as he was accorded a fair trial upon specific charges with an opportunity to defend. The charges need only apprise the accused of the offense claimed with sufficient clarity to inform him of the nature of the accusation. " To require technical precision in complaints of this character, drawn by merchants or business men, and to apply to them the strict rule of pleading in an action in a court of law would greatly embarrass and many times defeat the disciplinary regulations of such associations." (*People ex rel. Johnson* v. *N. Y. Produce Exchange*, 149 N. Y. 401, 413.) In light of these considerations the plaintiff had a fair trial before the tribunal authorized by the constitution and by-laws to act.

The court may not concern itself with the merits of the controversy or whether the decision of suspension was reasonable or unreasonable (*Neukirch* v. *Keppler*, 56 App. Div. 225, 230; affd., 174 N. Y. 509; *Young* v. *Eames*, 78 App. Div. 229; affd., 181 N. Y. 542; *Havens* v. *King*, 221 App. Div. 475, 480; affd., 250 N. Y. 617), but only whether the association has properly administered its own rules. Whether the plaintiff was guilty of the offense charged is a matter solely within the province of the union to determine.

Judgment for the defendant. Submit findings and conclusions accordingly. ■