22 So.2d 715

**WALKER v. MEDICAL SOC. OF MO-
BILE COUNTY et al.**

**1 Div. 227.**

Supreme Court of Alabama.

June 14, 1945.

Rehearing Denied July 26, 1945.

D. R. Coley, Jr., of Mobile, for appellant.

Wm. N. McQueen, Acting Atty. Gen., Forman Smith, Asst. Atty. Gen., and Johnston, McCall & Johnston, of Mobile, for appellees.

SIMPSON, Justice.

Complainant, Dr. Howard S. J. Walker, appeals from a final decree dismissing his bill seeking to restrain the appellee Medical Society and its secretary from enrolling Dr. Virginia E. Webb and Dr. John H. Greene as members thereof.

The former appeal of this case was to review rulings on the pleadings. The holding was that the bill of complaint made a case for equitable cognizance and that, on the facts alleged, complainant was entitled to the writ of injunction excluding the two doctors from membership in the Society. See Medical Society, etc., v. Walker, 245 Ala. 135, 16 So.2d 321.

·On coming in of the answer, however, and the taking of testimony, an entirely different issue was presented and it now appears that (1) the Medical Association of the State of Alabama, after due hearing at its annual meeting, had ordered and directed the County Society to enroll the two appellees as members and (2) that, though entirely eligible for membership in the Society, the two doctors had been blackballed and excluded from membership therein by the complainant and others under an agreement so to do regardless of their qualifications, vel non, for membership.

It is complainant's contention that the County Society is invested with the sole, exclusive, autocratic, and irremediable right and authority to exclude from membership any doctor, whether eligible or not, whatever the basis of such denial of membership, and that the State Association is without authority or jurisdiction to control

action in the premises. The present appeal is from a final decree, adversary to this position and denying the complainant relief, dismissing the bill, discharging the temporary injunction, and ordering the Secretary of the County Society to enroll the two doctors as members.

In analyzing the ultimate issue to be decided, it is well to look into the historical background of the Medical Association of the State of Alabama, its relation to the County Society, and to set forth at the outset the pertinent provisions of the Constitution and by-laws of the two organizations, and to indicate their integrated legal status with the State and County Boards of Health.

"The Medical Association of the State of Alabama" was first incorporated by legislative enactment February 13, 1850, Acts 1849–50, p. 315, without any public functions or duties. In 1873 at an annual meeting held at Tuscaloosa, a Constitution was adopted declaring its aims and functions and prescribing its mode of organization, the character of its membership and the names and duties of its officers. Extantly, the Association is functioning under its Constitution of 1908.

Article II of the present Constitution assigns as its objects:

"(1) To organize the medical profession of the State in accordance with principles and plans herein embodied;

"(2) To secure careful and reliable accounts of the endemic and epidemic diseases of the State;

"(3) To encourage the study of medical botany, medical topography, and medical climatology of the State;

"(4) To promote the establishment of a high standard of professional and moral education for medical men, for the purpose of protecting the people of the State against the evils of ignorance and dishonesty;

"(5) To endeavor to secure the enactment of wise and just laws for ascertaining by examination the qualifications of all persons who propose to offer their services to the people of any part of the State for the purpose of treating diseases of human beings;

"(6) To foster fraternal relations among the physicians of the State, and thus develop a spirit of loyalty to pure and exalted principles of professional ethics;

"(7) To combine the influence of the medical men of the State for the purpose of protecting their legitimate rights and of promoting the sanitary welfare of the people."

Under Article IV, Section 1, "All members of county medical societies holding charters from the Association shall be, ipso facto, members of the Association."

In addition to the usual officers, the State Medical Association elects a Board of Censors who serve for five years and who are in effect an executive committee, a court of impeachment and review, an auditing board and a board of examiners for admission to practice medicine. Article XIII of the Constitution reposes in the Board plenary powers and certain authorities and duties with reference to the selection and discharge of the State Health Officer, and provides that said Board "shall be authorized to act in three capacities, to wit: (1) As a State Board of Censors; (2) as a State Board of Medical Examiners; (3) as a State Committee of Public Health."

By the Act of February 19, 1875, Acts 1874–5, p. 130, the Medical Association of the State of Alabama was constituted a Board of Health of the State of Alabama, and the County Medical Societies, in affiliation with the State Association and organized in accordance with the provisions of its Constitution, were constituted the Boards of Health for their respective counties and as such were under the general direction of the State Board of Health.

These provisions were reenacted in every Alabama Code down to and including that of 1907. Later acts amended, revised and extended, under a recodification, the health laws of the State, but the structure of the system was not essentially altered. Parke v. Bradley, 204 Ala. 455, 86 So. 28.

The present organization of the Health Department of the State is found in Title 22, Chapter 1, Section 1 et seq., Code 1940. Section 1 constitutes the Medical Association of the State of Alabama the State Board of Health. Section 2 constitutes the State Board of Censors, of said Association, the State Committee of Public Health, with the Governor as a member and ex-officio chairman. Section 3 requires the State Committee of Public Health to act for the State Board of Health when not in session and when the Committee is not in session that the State Health Officer shall act for the Board and the Committee. Section 4 constitutes the Boards of Censors of the County Medical Societies, in

affiliation with the Medical Association of the State of Alabama and organized in accordance with the provisions of its Constitution, as the County Boards of Health of their respective counties to be under the general supervision and control of the State Board of Health (the State Association). Section 6 vests in these Boards of Health the sole and exclusive control of the public health and interdicts the setting up of any rival Board of Health or executive body for the exercise of public health functions. Other sections set forth the authority and jurisdiction of the State and County Boards of Health, provide for the election of the State and County Health Officers, and prescribe their various duties, etc.

It thus appears that the State Association, and the County Societies through their Boards of Censors, are impressed with public functions and are in effect the representative guardians of the public health of the various communities of the State.

■ Of the Medical Association of the State of Alabama, this court has already said:

"We are * * * of the opinion, having regard to its organization, aims, and activities, and its relation to the state board of health and to the public welfare in general, that it is a quasi public corporation, charged with duties and responsibilities which it cannot evade, * * *." Parke v. Bradley, 204 Ala. 455, 459, 86 So. 28, 31.

The Constitution of the State Association provides that the County Medical Societies of the State, when organized under constitutions and by-laws approved by the State Association, are entitled to the issuance of charters from the parent body. A charter was granted to the Medical Society of Mobile County pursuant therewith on the 19th day of April, 1912, since which date the Society has been in affiliation with the State Association. Under the Constitution of the County Society five members of the Society are elected to membership on the County Board of Censors, which Board is endowed with the same three capacities with regard to the County as is the State Board of Censors with the State. (We note that the State Constitution, which is controlling, authorizes the County Boards of Censors to act in only two capacities, viz., (1) as a

Board of Censors, (2) as a County Board of Health.)

Article 3 of the Constitution of the Medical Society of Mobile County defines as among its objects:

"Art. 3. The objects of this society shall be:

"(1) To accept the responsibilities and discharge the duties that devolve upon it as the legal board of health of the county.

    *      *      *      *      *

"(5) To co-operate with the Medical Association of the State of Alabama in the accomplishment of the great aims set forth in its Constitution;

    *      *      *      *      *

"(7) To so extend the membership as to make it include, if possible, all worthy and deserving members of the profession residing in the county."

We shall see, hereafter, that the appellee Medical Society, holding its charter from the Medical Association of the State of Alabama, and acting in affiliation with it, is subordinate to and subject to the supervisory powers of the Association.

Article XIII of the Constitution of the State Association provides, inter alia, with regard to the State Board of Censors, as follows:

"State Board of Censors.
"Jurisdiction.

"Sec. 9—When acting as a State Board of Censors to it shall be referred without discussion:

"(1) All motions, resolutions, or inquiries, of whatever nature, affecting the organization, policy, or welfare of the Association, or of any one, or more of the county societies in affiliation therewith;

    *      *      *      *      *

"(9) All appeals from the decision or verdict of any county society in affiliation with the Association;

"(10) Any other question germane to those enumerated above may, upon a majority vote, either with, or without discussion, be referred to the Board of Censors."

Article XV of the Constitution of the State Association deals with the chartering and functioning of County Medical Societies. Section 1 makes provision for the issuance of County charters. Section 2 prescribes the eligibility for membership therein. Section 3 authorizes, *subject to the approval of the Association,* the adop-

tion of rules and regulation for the government of the Societies, the election of officers, etc., and the performance of *"all other needful acts not inconsistent with the Constitution or ordinances"* of the State Association.

Article XV further provides (we supply emphasis):

"Sec. 4.—They (County Medical Societies) shall, *under the general control and supervision of the Association,* exercise such jurisdiction over their members as is authorized by their respective constitutions, ordinances, and by-laws, except, that when in attendance upon a meeting of the Association members of county societies shall be under the jurisdiction of the constitution and ordinances of that body.

\* \* \* \* \*

"Sec. 14.—County societies in affiliation with the Association *shall abide by all decisions of the Association regardless of the attitude assumed by their respective delegates toward any question that has been settled by the Association."*

Article XX stipulates for the "Appellate Jurisdiction" of the State Association, among other matters, in all questions of *policy that may have been adjudicated by a County Society,* and provides in Section 3: "§ 3.—The Association shall have the right to confirm or amend in such way as it deems proper, any verdict rendered, or conclusion reached, by a county society, *the decision of the Association being final.* \* \* \* "

The exclusive prerogative to adopt such provisions for supervisory control of the subordinate Societies is so stated in Article XXI, Section 1: "§ 1.—The Association shall have the right to adopt such ordinances and by-laws for its own government *and that of the county societies* as it may deem proper."

Prior to the institution of this suit, and after action in the County Society of rejecting the two doctors mentioned, the State Association in attempting to exercise its supervisory powers over the Medical Society of Mobile County, upon notice to all parties concerned, duly reviewed this action of the subordinate organization and determined as to each applicant for membership "that there had been no charges filed or evidence presented against (them) and no constitutional, professional, ethical, or moral reasons offered to sustain" the County Society's act. The said applicants were found and declared to be entirely eligible for membership and, after recommendation of its Board of Censors, the State Association, by unanimous vote, ordered and directed the County Society to enroll them as members of the local Society.

We have given this case attentive and studious consideration and have reached the conclusion that the trial court was correct in denying complainant relief and in decreeing "that the respondents, Dr. Virginia E. Webb and Dr. John H. Greene \* \* \* by virtue \* \* \* of the proceedings, decisions, and mandates of the Medical Association of the State of Alabama, had in such matters; (were) entitled to have their names enrolled as \* \* \* members by the respondent, Dr. W. W. Scales, as the Secretary of said (County) Society."

■ The Constitution, and by-laws adopted in conformity therewith, of the State Association, so long as they do not contravene some public law or principle of public policy, constitute an enforceable contract as between the members thereof, as between the Association on the one side and the individual members (as Dr. Walker) on the other and as between the two organizations; and their respective rights, powers, duties and liabilities are measured accordingly. 7 C.J.S., Associations, p. 34, § 11(b); 5 C.J. 1341; Weatherly v. Medical & Surgical Society of Montgomery County, 76 Ala. 567; Des Moines City Ry. Co. v. Amalgamated Ass'n, etc., 204 Iowa 1195, 213 N.W. 264.

■ The Medical Society of Mobile County, by charter duly issued to it by the State Association, is affiliated with and subordinate and subject to the jurisdiction of the parent organization, in accordance with the stipulations of the Constitution and by-laws of the latter. The County Society, and Dr. Walker as a member thereof, were thereby subject and amenable to the provisions of the Constitution and by-laws of the State organization, which measured their relations to it and constituted the contract with that organization by which each is bound. Brotherhood of Railroad Trainmen v. Barnhill, 214 Ala. 565, 108 So. 456, 47 A.L.R. 270; Shapiro v. Gehlman, 152 Misc. 13, 272 N.Y.S. 624, 628; Des Moines City Ry. Co. v. Amalgamated Ass'n of Ry. Employees, supra; Polin v. Kaplan, 257 N.Y. 277, 177 N.E. 833; In re Haebler, 149 N.Y. 414, 44 N.E. 87.

A fair and reasonable construction of the above quoted sections of the Articles of the Constitution of the State Association, when considered in the light of the purposes the whole structure was designed to effect, makes it clear that the Association duly acted within the scope of its supervisory jurisdiction over the County Medical Society in ordering the enrollment as members of the two eligible physicians thus excluded. By the integrated structure of the two organizations the County Society was "under the general control and supervision of the Association" in regard to such matters (§ 4, Art. XV) and must "abide by all decisions (constitutional) of the Association regardless of the attitude assumed by their (the County Societies') respective delegates toward any question * * * settled by the Association" (§ 14, Art. XV), which decisions shall be final (Art. XX, § 3).

Let us see how this interpretation bears upon the case as presented by the evidence.

It is uncontroverted that the two doctors were worthy and reputable practicing physicians of Mobile County and possessed of all the qualifications for membership in the Society. They were both native Alabamians and, in effect, conceded to be eminently eligible for membership. The record discloses that appellant and several other members of the Society who were present and voting when the applications of these two persons were rejected had previously combined and agreed among themselves to vote to reject all applications for membership, regardless of eligibility, pending the duration of the present war and that this agreement pertained as to the present two applicants and was carried out accordingly, thus resulting in their exclusion. One of the members of this combination, before the meeting when the applications were to be voted upon, told Dr. Webb that he intended to keep all new applicants out of the Society during the emergency and that he intended to blackball her. The appellant, in his testimony, confirmed such an agreement and asserted that this physician was one of the members of the so-called combination.

To perpetuate such an agreement (for no one can, with accuracy, prognosticate the end of the present conflict) could finally paralyze the effectiveness of the local Society and if transacted long enough might, if the distinguished gentlemen in the voting combine should survive long enough,

result in the restriction of membership only to themselves and would thereby repose in them unintended and autocratic authority. Undoubtedly the Constitutions of the two organizations, fairly interpreted, intend no such objectives, nor that the State Association should be powerless to redress such action. However worthy the motives of those members in so voting, it was within the competence of the State Association, on a question of such fundamental policy, to (quoting from Art. XX, Sec. 3, above) "amend * * * the conclusion reached by the County Society, the decision of the Association being final."

It is important to note, and must be here considered, that by the law constituting the State Association as the State Board of Health, it has become the residuum of official power and is impressed with attributes and functions of a highly public nature. Parke v. Bradley, supra. To it has been delegated specific governmental prerogatives. and duties by the State of Alabama, resulting in the repositing with it of exclusive franchises and powers of an eminent degree and of the highest concern to the public welfare. A similar status prevails as to the Board of Censors of the County Medical Society which, mutatis mutandis, is the County Board of Health. The State Association and the County Societies in affiliation therewith, when organized under constitutions and by-laws approved by the State Association, have accepted these delegated responsibilities, which applies to the Medical Society of Mobile County, and it is plain that the parent organization, entrusted with such grave public duties, should not be powerless to direct and control action of a subordinate County Society in matters of the character now under consideration, which must undoubtedly have a direct effect upon the public welfare. We think the comprehensive terms of the quoted sections of the State Constitution, construed in the light of the public character of the respective organizations, are due this interpretation.

The design for superior control of the State Association is carried into the act creating the County Boards of Health, though, of course, the Boards of Health are not legally identical with the County Societies. As to this, Section 4, Title 22, Code 1940, uses the same language as is embodied in Art. XV, Sec. 4, of the State Association Constitution (note supplied italics), to wit: "§ 4. The boards of

censors of county medical societies (etc.) are constituted county boards of health of their respective counties, * * * *but shall be under the general supervision and control of the state board of health, (etc.)."*

To further elucidate the proposition and to illustrate the reasonableness of so construing the Articles of the State Association Constitution, the public character of the organization should be kept in mind and that one of the designs of the organization, as indicated in its Constitution, was to accept the responsibility of safeguarding the public health, delegated to it by State law. This bears importantly on the question at issue.

There appears to be a certain opprobrium on any physician who is not a member of his County Society and the State Association. As a non-member he may not procure insurance protection against malpractice, he is barred from membership in the American Medical Association, is generally frowned upon by other members of the profession, and, of course, cannot become a health officer since the selection of same is made from the membership of the Society.

The reasonable effect of thus excluding all eligible, incoming physicians from Society membership would be to make them outcasts of the organization, to become members of which all eligible and worthy physicians naturally aspire. It would be sophistical to contend that this result would not strongly tend to discourage the best and most skillful members of the medical profession from locating in Mobile County, and that this would not have a direct and deleterious effect upon the public health of the county where there is necessarily a need for such doctors, due to the exceptionally patriotic conduct of a large number of the local practitioners who entered the armed services, thereby resulting in a shortage of civilian physicians.

It is manifest that the Constitution of the State Association, integrated as it is with the public health laws of the State, did not, nor does it, intend that the Association should be impotent to correct such action in the discharge of its accepted duties and responsibilities of guarding the public health.

On the contrary, it is clear to us that, reasonably construed, the Constitution of the Association vests in the parent body superior authority and exclusive jurisdiction in matters such as here considered and to fail to give effect to the various provisions indicative thereof, so oft repeated throughout the body of that Constitution, would be to ascribe to them no more than a meaningless tautology, evidently not intended.

The proposition, that the parent organization by its constitutional mandates may legally assume such exclusive supervisory jurisdiction over the subordinate Society, has been set at rest by our own court. Such Association, operating by and through the members and for their welfare, may adopt laws for their government and to administer their several rights, powers and benefits, and to this end may invest the parent Association with such exclusive prerogatives as here appearing and, in the absence of fraud, the decisions of the parent organization made pursuant therewith are binding upon the members as well as the local Societies. Brotherhood of Railroad Trainmen v. Barnhill, supra.

In the past years the State Association, with which complainant and the County Society were thus affiliated, has, in effect, construed the various sections of the Constitution as vesting in the State Association original jurisdiction in matters of analogous nature. This alone has sustensive force. The interpretation placed upon contracts between the parties and practiced by them will ordinarily be accepted by the court. Birmingham Waterworks Co. v. Hernandez, 196 Ala. 438, 71 So. 443, L.R.A.1916E, 258; Merchants' National Bank v. Hubbard, 220 Ala. 372, 125 So. 335; 5 Ala.Dig., Contracts, ☞ 170(1); 17 C.J.S., Contracts, p. 755, § 325.

Again, the construction placed upon these constitutional provisions is entirely reasonable and consistent with the integrated structure of the medical bodies involved and the rule seems to be established that the courts will not review the correctness of the interpretation placed upon the Constitution and by-laws of a voluntary Association by its duly authorized tribunal —here the State Association and its Board of Censors—in matters merely procedural or jurisdictional, if such interpretation is fair and reasonable. Harris v. Missouri Pac. Ry. Co., D.C., 1 F.Supp. 946; Pratt v. Amalgamated Ass'n, etc., 50 Utah 472, 167 P. 830; Long v. B. & O. Ry. Co., 155 Md. 265, 141 A. 504; Simpson v. Grand Internat. B. of L. Engineers, 83 W.Va. 355, 98 S.E. 580.

It results from these considerations that, though the Medical Society of Mobile County is a voluntary association, member-

ship to which is not an independent, enforceable right but is a privilege that may be accorded or withheld at the will of the Society, if in accordance with the duly constituted laws of said Society and consistent with the constitutional edicts of the State Association, yet the complainant is not entitled to the injunction here prayed for because of the mandate of the State Association duly issued to the Society to enroll the two physicians aforesaid.

The decree is affirmed.

Affirmed.

All the Justices concur.