130 So.2d 39

**R. E. HILL et ux.**

v.

**William M. DAVIS.**

7 Div. 523.

Supreme Court of Alabama.

May 11, 1961.

Starnes & Holladay, Pell City, for appellants.

 

Maurice F. Bishop, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a final decree in a declaratory judgment action to construe a written agreement between adjoining landowners executed in 1928. Appellant Hill was the grantor in the agreement, and N. H. Waters and W. A. Poindexter, the predecessors in title to appellee Davis, were the grantees. In 1928, Hill resided in Texas, but in 1955, he moved on his Alabama land and has since resided there.

A small branch ran east through the property of Hill and on through the property of Waters and Poindexter, who were lower riparian owners. They built a dam on their property with the idea of constructing a lake. The line between their property and Hill's was the Simmons Mountain Road, which runs north and south and intersects Alabama Highway 174, which is part of the northern boundary of the lake. A fairly high bridge on the boundary line road spans the branch.

When the dam was completed in 1928, it was discovered that the impounded water overflowed on Hill's land west of the road. Waters and Poindexter negotiated with Hill and the agreement which is the subject of this suit was executed. In pertinent part, it reads:

"Know All Men by These Presents: That in consideration of the sum of Two Hundred Seventy-five ($275.00) Dollars, the receipt whereof is hereby expressly acknowledge, I, the undersigned, R. E. Hill, for myself, my heirs, executors, administrators and assigns, do hereby and herewith forever release, discharge and acquit N. H. Waters and W. A. Poindexter, their heirs, executors, administrators and assigns of and from all damage, claims, rights, and causes of action which I now have against them, or either of them, or which at any future time I may have against them, or either of them, for and on account of the inundation and overflowage of the following described

property, situated in the County of St. Clair, State of Alabama, to-wit:

(Description)

"By these presents further granting to the said N. H. Waters and W. A. Poindexter, their heirs, executors, administrators and assigns, an easement in perpetuity, or for so long as they or either of them, their heirs, executors administrators and assigns choose to enjoy said easement, for said overflowage in and to any part of said land owned by me.

"In Witness Whereof, I have hereunto set my hand and seal on this 10th day of August, 1928.

"/s/ R. E. Hill  (L. S.)
"(Acknowledgment)"

The property described was much larger in area than the actual land which was covered by the water forming the lake. About 7/8ths of the lake was on land of Waters and Poindexter, the other 1/8th was on Hill's land. Appellee purchased the Waters-Poindexter land in 1956.

The bill alleged that the entire body of water was treated and used as one lake, and was developed as a commercial lake; that Davis and his predecessors in title have leased and sold fishing rights to the entire lake, and have historically had access to the overflowed or inundated area by boat and by fishing from the banks in that portion of the lake on Hill's land. It was alleged that boats traversed the entire lake and the proof showed that boats could easily go under the bridge on the road which was the boundary line between the properties.

It was alleged that during 1959, the State of Alabama acquired part of appellee's land and part of Hill's land for highway purposes (in connection with Highway 174) and it was necessary to drain the lake. While it was temporarily drained, appellant built a fence along his side of the boundary line. The fence did not impede the water from going over Hill's land, but prevented appellee and his licensees from going under the bridge by boat.

The demurrer to the bill was overruled and answer was filed. The trial followed and the court found that:

"(a) The complainant has the right to force or overflow water upon the land, or any part of it, described in the instrument executed by the respondent R. E. Hill on August 10, 1928, attached as Exhibit A to the bill of complaint; (b) The complainant has the full and exclusive right to the use of the water and the fishing privileges on and in the water that has been overflowed, onto respondents' land by virtue of such instrument; (c) The complainant has the right to the full and exclusive use of the land described in Exhibit A and surrounding that part of the lake on the respondents' property, to the extent necessary, and only to that extent, for the complainant to protect and enjoy the full and exclusive use of the water and fishing privileges aforesaid.

"In connection with (c) above the Court points out that the easement covers some 8 or 10 acres, while the lake covers only one and one-half to two acres of said easement. The grantees are held to have bought the right to protect their investment in the lake and in the fish, and they have so asserted and exercised that right from the time the lake began operating on a commercial basis."

Appellants contend that the decree was contrary to the agreement because it added "fishing privileges" to an agreement which was silent as to such privileges.

■ We agree with the trial court that, in the absence of evidence, appellants' contention "would carry more weight." The rule is that the interpretation placed upon contracts between the parties and practiced by them will ordinarily be accepted by the court. Walker v. Medical Society of Mobile

County, 247 Ala. 169, 22 So.2d 715; Olsson v. Nelson, 248 Ala. 441, 28 So.2d 186; 5 Ala.Dig., Contracts, ☜170(1).

 The preponderance of the evidence showed that appellee and his predecessors in title had used the entire lake for commercial fishing since 1928, and many witnesses testified that they had fished from both boats and the bank of the lake on the west or "Hill" side of the Simmons Mountain Road. After allowing fishing privileges under the contract for 31 years, appellants' erection of the fence in 1959 came too late.

"The right to take fish in any water which is not navigable, although it belongs prima facie to the owner of the soil, follows the ownership of the water, if that is separated from the ownership of the soil." Bosworth v. Nelson, 170 Ga. 279, 152 S.E. 575; Turner v. Selectmen of Hebron, 61 Conn. 175, 22 A. 951, 14 L.R.A. 386; 36A C.J.S. Fish § 5, p. 504; 22 Am.Jur., Fish and Fisheries, § 23, p. 684. See 47 A.L.R.2d 406[d]. In Schultz v. Carter, 153 Va. 730, 151 S.E. 130, the upper landowner Fox granted "water rights on such land as may be overflowed" to Garrett, who had built a dam on the stream on his own land. In that case, Fox reserved in the contract the right to fish in the pond. The court held that the right reserved was personal to Fox and was neither assignable nor inheritable. The court said:

"* * * It is observed also that the grant to Garrett covers only the water rights and not the land, because Fox remained the owner of the two acres of land in fee simple, subject only to Garrett's right or easement of flooding it. At the same time, Garrett became the sole owner of the water on the flooded area, subject only to the right of Fox to fish in the pond. These conclusions seem to us to be so obvious as to need no elaboration."

No argued assignment of error is sufficiently meritorious to warrant a reversal of the decree.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.